1  KATHRYN LEE BOYD, ESQ. (SBN 189496)
   lboyd@srbr-law.com
2  DARCY R. HARRIS, ESQ. (SBN 200594)
   dharris@srbr-law.com
3  JEFF D. NEIDERMAN, ESQ. (SBN 203818)
   jneiderman@srbr-law.com
4  SHERLI SHAMTOUB, ESQ. (SBN 270022)
   sshamtoub@srbr-law.com
5  SCHWARCZ, RIMBERG, BOYD & RADER LLP
   6310 San Vicente Boulevard, Suite 360
6  Los Angeles, California 90048
   Phone: (323) 302-9488
7  Fax: (323) 931-4990
   *Attorneys for Plaintiffs, Gina Balasanyan and Nune Nalbandian*

8

9

10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  Gina BALASANYAN, an individual, and Nune NALBANDIAN, an individual, on behalf of themselves and all others similarly situated, | **Civil No. 11-CV-2609 JM (WMc)** |
| 13 | **PLAINTIFFS GINA BALASANYAN AND NUNE NALBANDIAN'S OPPOSITION TO DEFENDANT NORDSTROM INC.'S MOTION TO COMPEL ARBITRATION AND STAY ALL CIVIL COURT PROCEEDINGS** |
| 14 | |
| 15                         Plaintiffs, | |
| 16           vs. | |
| 17  NORDSTROM, INC., a Washington corporation; DOES 1-100, inclusive, | Date:    TBD |
| 18                         Defendants. | Time:    10:00 a.m. |
| 19 | Ctrm:    16 |
| 20 | Judge:   Hon. Jeffrey T. Miller |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration

Balasanyan et al. v. Nordstrom, Inc.
11-CV-2609 JM (WMc)

# TABLE OF CONTENTS

I.  INTRODUCTION ………………………………………………………………1

II.  STATEMENT OF RELEVANT FACTS …………………………………….............2

III.  ARGUMENT ……………………………………………………………………4

  A.  **Nordstrom's Class Action Waiver Violates The NLRA** …………………4

  B.  **Plaintiffs' Rights to Collective Action Under Federal Employment Law Are Consistent with the FAA and Not Precluded by _Concepcion_** …………………7

  C.  **Nordstrom's DRP, Unilaterally Imposed On Putative Class Members After Commencement Of This Litigation, Is Unenforceable As a Matter of Federal Law, Because It Is An Improper Communication With Putative Class Members** ……………………………………………………………………9

  D.  **_Concepcion_ Is Consistent with _Gentry_** ……………………………12

  E.  **Nordstrom's Class-Action Waiver DRP Fails under the _Gentry_ Factors** …..15

    1.  **Claimants Lose Rights to Even Individual Claims Because They Are Unaware That Their Rights Have Been Violated** …………………15

    2.  **Suing Poses a Risk of Retaliation** …………………………………..16

    3.  **Individual Awards Tend To Be Modest And Class Members Face Other Real World Obstacles To The Vindication Of Their Rights**…16

    4.  **Even If Some Individual Claims Are Sizeable Enough To Provide Incentive For Individual Action, Nordstrom Is Incentivized to Pay Those Judgments And Continue Its Violative Conduct** …………….17

  F.  **Generally Applicable Contract Principles Preclude Enforcement of Nordstrom's Class Action Waiver DRP** ………………………………18

    1.  **Defendant Has Failed to Meet Its Burden of Establishing the Existence of a Valid Arbitration Agreement** …………………………………19

    2.  **Nordstrom's Class Action Waiver DRP is Unconscionable** …………20

      (a)  **_The Class Action Waiver Is Procedurally Unconscionable_** ……21

      (b)  **_The Class Action Waiver Is Substantively Unconscionable_**……23

IV.  CONCLUSION …………………………………………………………...25

i

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration

Balasanyan et al. v. Nordstrom, Inc.
11-CV-2609 JM (WMc)

# TABLE OF AUTHORITIES

**Page(s)**

## U.S. CASES

*ABF Freight System, Inc. v. NLRB*,
  510 U.S. 317 (1994), .................................................................................. 7

*Agostini v. Felton*,
  521 U.S. 203 (1997) .................................................................................... 13

*Aguayo v. U.S. Bank*,
  653 F.3d 912 (9th Cir. 2011) ....................................................................... 7

*Arguelles-Romero v. Superior Court*,
  184 Cal. App. 4th 825 (Cal. App. 2d Dist. 2010) ........................................ 14, 15

*AT&T Mobility v. Concepcion*,
  131 S. Ct. 1740 (2011) ........................................................................ *passim*

*Booker v. Robert Half Int'l*,
  413 F.3d 77 (D.C. Cir. 2005)  ..................................................................... 13

*Brady v. National Football League*,
  644 F.3d 661 (8th Cir. 2011) ........................................................................ 6

*Cal. Pac. Med. Ctr. v. N.L.R.B.*,
  87 F.3d 304 (9th Cir. 1996), ......................................................................... 2

*Doctor's Assocs. v. Casarotto*,
  517 U.S. 681 (1996) ................................................................................. 18, 19

*EEOC v. Waffle House, Inc.*,)
  534 U.S. 279 (2002) ................................................................................... 12

*Ferguson v. Countrywide Credit Indus., Inc.*,
  298 F.3d 778 (9th Cir. 2002) ....................................................................... 22

*Gilmer v. Interstate/Johnson Lane Corp.*,
  460 U.S. 20 (1991) ...................................................................................... 12

*Kinney v. United HealthCare Services, Inc.*,
  70 Cal. App. 4th 1322 (1999) ...................................................................... 21

*Eastex, inc. v. NLRB*,
  437 U.S. 556 (1978) ...................................................................................... 4

ii

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration

Balasanyan et al. v. Nordstrom, Inc.
11-CV-2609 JM (WMc)

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Hamby v. Power Toyota Irvine*,
  2011 U.S. Dist. LEXIS 77582 (S.D. Cal. July 18, 2011) ...................................................... 18

*Newton v. Clearwire Corp.*,
  2011 U.S. Dist. LEXIS 108794 (E.D. Cal. Sept. 22, 2011) ...................................... 18, 19, 20

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000) ...................................................................................................... 12, 13

*Hadlock v. Norwegian Cruise Line, Ltd.*,
  2010 U.S. Dist. LEXIS 39247 (C.D. Cal. 2010), ............................................................... 19

*Hampton Hardware v. Cotter & Co.*,
  156 F.R.D. 630 (N.D. Tex. 1994) ..................................................................................... 10

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............................................................................... 10

*In re School Asbestos Litigation*,
  842 F.2d 671 (3d Cir. Pa. 1988) ......................................................................................... 9

*J.I. Case Co. v. NLRB*,
  321 U.S. 322 (1944) ........................................................................................................... 5

*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982) ............................................................................................................. 8

*Kempf v. Barrett Bus. Servs., Inc.*,
  2007 U.S. Dist. LEXIS 86115 (N.D. Cal. July 31, 2007) .............................................. 19, 20

*Laster v. T-Mobile USA, Inc.*,
  2008 U.S. Dist. LEXIS 103712 (S.D. Cal. Aug. 11, 2008) ................................................. 10

*Long v. Fidelity Water Sys., Inc.*,
  2000 U.S. Dist. LEXIS 7827 (N.D. Cal. May 24, 2000) ................................................ 10, 20

*Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers*,
  861 F.2d 1124 (9th Cir. 1988) ............................................................................................ 7

*Mitchell v. DeMario Jewelry*,
  361 U.S. 288 (1960) ......................................................................................................... 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
  473 U.S. 614 (1985) ................................................................................................... 12, 13

iii

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration

Balasanyan et al. v. Nordstrom, Inc.
11-CV-2609 JM (WMc)

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

*Mohave Elec. Co-op, Inc. v. NLRB*,
    206 F.3d 1183 (D.C. Cir. 2000) ............................................................... 6

*Morse v. ServiceMaster Global Holdings, Inc.*,
    2011 U.S. Dist. LEXIS 82029 (N.D. Cal. July 27, 2011) ...................................... 13

*Morton v. Mancari*,
    417 U.S. 535 (1974) ....................................................................... 7

*National Woodwork Mfrs. Assn. v. NLRB*,
    386 U.S. 612 (1967) ....................................................................... 4

*NLRB v. Advanced Stretchforming Int'l, Inc.*,
    233 F.3d 1176 (9th Cir. 2000) ............................................................. 7

*NLRB v. Curtin Matheson Scientific, Inc.*,
    494 U.S. 775 (1990) ....................................................................... 7

*NLRB v. JLL Rest., Inc.*,
    325 Fed. Appx. 577 (9th Cir. 2009) ........................................................ 7

*NLRB v. Town & Country Elec., Inc.*, 5
    16 U.S. 85 (1995) ......................................................................... 7

*Palmer v. Infosys Techs., Ltd.*,
    2011 U.S. Dist. LEXIS 130104 (M.D. Ala. Nov. 9, 2011)  ..................................... 21

*Perry v. Thomas*,
    482 U.S. 483 (1987) ...................................................................... 19

*Plows v. Rockwell Collins, Inc.*,
    2011 U.S. Dist. LEXIS 88781, 2011 WL 3501872 (C.D. Cal. Aug. 9, 2011) ................... 2, 13

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ............................................................. 23

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976), ...................................................................... 9

*Rodriguez de Quijas v. Shearson/American Exp., Inc.*,
    490 U.S. 477 (1989) ...................................................................... 13

*Saincome v. Truly Nolen of Am., Inc.*, ,
    2011 U.S. Dist. LEXIS 85880 (S.D. Cal. Aug. 3, 2011) ............................... 21-22, 23

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration

Balasanyan et al. v. Nordstrom, Inc.
11-CV-2609 JM (WMc)

**TABLE OF AUTHORITIES (cont'd)**

Page(s)

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
   130 S. Ct. 1758 (U.S. 2010) ................................................................... 2

*Sutherland v. Ernst & Young, LLP*,
   2011 U.S. Dist. LEXIS 26889 (S.D.N.Y. March 3, 2011) .................... 12

*Sure-Tan, Inc. v. NLRB*,
   467 U.S. 883 (1984), ............................................................................ 7

*Salt River Valley Water Users' Asso. v. NLRB*,
   206 F.2d 325 (9th Cir. 1953) ................................................................. 6

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003) ............................................................. 23

*Unimax Express, Inc. v. Cosco N. Am., Inc.*,
   2011 U.S. Dist. LEXIS 136110 (C.D. Cal. Nov. 28, 2011) ..................... 2

*Vimar Seguros y Reaseguros SA v. M/V Sky Reefer*,
   515 U.S. 528 (1995) .............................................................................. 9

*Williams v. Securitas Sec. Servs. USA, Inc.*,
   2011 U.S. Dist. LEXIS 75502 (E.D. Pa. July 13, 2011) ....................... 1, 9, 11, 12

## <u>State Cases</u>

*Abramson v. Juniper Networks, Inc.*
   115 Cal. App. 4th 638 (2004) .............................................................. 21

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
   6 P.3d 669, 690 (Cal. 2000) ........................................................... 21, 22

*Asmus v. Pacific Bell*,
   23 Cal. 4th 1 (Cal. 2000) ..................................................................... 20

*Bilbrey v. Cingular Wireless, LLC*,
   164 P.3d 131 (Okla. 2007), .................................................................. 24

*Bolter v. Superior Court*,
   87 Cal. App. 4th 900 (2001) ................................................................ 23

v

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration

Balasanyan et al. v. Nordstrom, Inc.
11-CV-2609 JM (WMc)

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Brown v. Ralphs Grocery Co.*,
    197 Cal. App. 4th 489 (Cal. Ct. App. 2011) .......................................................................... 13

*Carnegie v. H&R Block, Inc.*,
    687 N.Y.S.2d 528 (N.Y. Sup. Ct. 1999), .............................................................................. 11

*Craig v. Brown & Root*,
    84 Cal. App. 4th 416 (Cal. App. 2d Dist. 2000) ................................................................... 19

*Discover Bank v. Superior Court*,
    36 Cal. 4th 148 (Cal. 2005) .................................................................................................. 14

*Engalla v. Permanente Medical Group, Inc.*,
    15 Cal. 4th 951 (Cal. 1997) .................................................................................................. 19

*Gentry v. Superior Court*,
    42 Cal. 4th 443 (Cal. 2007) ............................................................................................. *passim*

*H&R Block, Inc. v. Haese*,
    82 S.W.3d 331 (Tex. App. 2002) .......................................................................................... 12

*Newberger v. Rifkind*,
    28 Cal. App. 3d 1070, 104 Cal.Rptr. 663 (1972) ............................................................. 19-20

### Federal Statutes

Federal Arbitration Act ("FAA") ............................................................................................... 7, 8

29 U.S.C. § 157 ............................................................................................................................... 4

9 U.S.C § 2 ...................................................................................................................................... 8

### Federal Rules of Procedure

Fed. R. Civ. P. 23(d) ..................................................................................................................... 10

### State Statutes

Cal. Civ. Code § 1550 ................................................................................................................... 20

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration

Balasanyan et al. v. Nordstrom, Inc.
11-CV-2609 JM (WMc)

1

**TABLE OF AUTHORITIES (cont'd)**

2
Page(s)

3
**Other Authorities**

4
*D.R. Horton, Inc*., 357 NLRB No. 184 (Jan. 3, 2012) ........................................................ *passim*

5
*Le Madri Restaurant*,

6
331 NLRB 269, 275 (2000) ............................................................................................. 6

7
Restatement (2d) of contracts § 178(1) ............................................................................... 8

8
Restatement (2d) of contracts § 178(3) ............................................................................... 8

9
*United Parcel Service*,

10
252 NLRB 1015 (1980), enfd. 677 F.2d 421 (6th Cir. 1982) ................................... 4

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration

Balasanyan et al. v. Nordstrom, Inc.
11-CV-2609 JM (WMc)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Defendant Nordstrom, Inc. ("Nordstrom" or "Defendant") seeks to compel Plaintiffs, Gina Balasanyan and Nune Nalbandian, low level employees, to arbitrate their wage and hour claims on an individual basis only and to forbid any class or collective action claims in any forum whatsoever, based on the class action waiver Defendant inserted into its arbitration agreement following the recent U.S. Supreme Court case *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) – and after Plaintiffs brought this class action.  Defendant's motion rests solely on applying *Concepcion*, which held that in the consumer class action context, a class action waiver in a pre-dispute arbitration agreement is enforceable, and state law to the contrary based on public policy favoring class procedures is preempted by the Federal Arbitration Act ("FAA").  *Id.*; *see* Defendant's Motion to Compel, Docket 39-1 ("Mtn.") at 1, 7-12.

However, *Concepcion* held that state law defenses to class action waiver arbitration agreements asserted by the consumer plaintiffs were preempted only to the extent they were in <u>conflict</u> with the FAA.  *Concepcion*, *131 S. Ct.* at 1750.  Here, the class and collective action arbitration clauses are unenforceable because they violate federal law protecting employees' rights to collective actions.  As the NLRB recently ruled in *D.R. Horton, Inc.*, 357 NLRB No. 184 (Jan. 3, 2012), class action waivers such as the one relied on by Defendant violate employees' rights under the NLRA, and such a finding is consistent with the FAA.  *Id.* at *6.  Further, to the extent that any conflict between the two statutes might be found, the policies behind the NLRA protecting employees trump those of the FAA.  *Id.*

Further, even after *Concepcion*, class action waiver arbitration agreements have been held unenforceable under federal law where, as here, they are imposed upon employees post-class action filing and are improper, confusing communications with putative class members.  *See Williams v. Securitas Sec. Servs. USA, Inc.*, 2011 U.S. Dist. LEXIS 75502 *3 (E.D. Pa. July 13, 2011).  Moreover, the arbitration agreement is unenforceable under *Gentry v. Superior Court*, 42 Cal. 4th 443 (Cal. 2007), which survives *Concepcion* because federal substantive rights are at

1  issue. Finally, as *Concepcion* acknowledges, state law contract principles still control whether an

2  arbitration agreement is enforceable. Here, Defendant fails to meet its burden under a motion to

3  compel to demonstrate each element of an enforceable contract. Moreover, the evidence

4  demonstrates that the contract is unconscionable.

5      Because Defendants cannot show that the post-litigation arbitration agreement is

6  enforceable and the class action waiver clause is not severable from the rest of the agreement per

7  its own terms, all class claims must be tried in court. Accordingly, the motion to compel

8  arbitration must be denied.

9  **II.    STATEMENT OF RELEVANT FACTS**

10     Plaintiffs are employed as commission-based salespersons by Defendant. On April 5,

11 2011, Plaintiffs brought this class action on behalf of all U.S. retail sales staff presently and

12 formerly employed by Nordstrom who are, or were, paid commission wages, and whose work

13 time spent during non-commission producing activities ("Non-Sell Period") is compensated only

14 by commission in violation of California *Labor Code* and the Federal Labor Standards Act.

15     At the time of filing, Nordstrom's Dispute Resolution Program ("DRP") was silent on the

16 issue of class action arbitration. *See* Declaration of Sherli Shamtoub ("Shamtoub Decl."), Ex. 2.

17 Since "a party may not be compelled under the FAA to submit to class arbitration unless there is a

18 contractual basis for concluding that the party *agreed* to do so," *Stolt-Nielsen S. A. v.*

19 *AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (U.S. 2010), Plaintiffs initiated this pending litigation in

20 a court of competent jurisdiction.[1] Nordstrom submitted an answer to Plaintiffs' complaint, and

21 did not move to compel arbitration. *See* Docket No. 1.

22     In August 2011, on the heels of *Concepcion*, Nordstrom changed its DRP to include a

23 class action waiver applicable to "past, present and future disputes that otherwise would be

24 resolved in a court of law"[2] (hereinafter "Class-Action Waiver DRP"). Shamtoub Decl., Ex 3-4.

---

[1] Plaintiffs initiated their action in Los Angeles Superior Court, Case No.: BC458600. Defendant removed the action to Federal court on July 11, 2011.
[2] Nordstrom introduced the class action waiver in a letter mailing to current employees in June 2011. However, at that time, the class action waiver also applied to representative or private attorney general actions ("PAGA"). Shamtoub Decl., Ex 3. *See Plows v. Rockwell Collins, Inc.*, 2011 U.S. Dist. LEXIS 88781, 2011 WL 3501872, *4-5 (C.D. Cal. Aug. 9, 2011) (employees

At the time, despite this action being filed, Nordstrom did not inform Plaintiffs' counsel of the Class-Action Waiver DRP, nor did Nordstrom instruct Plaintiffs to consult with their counsel regarding the Class-Action Waiver DRP.  Rather, in strong-arm fashion, Defendants' managers confused and misled employees in the roll-out of the Class-Action Waiver DRP.  Nordstrom human resources personnel and managers were instructed to collect employees' acknowledgment of receipt of the Class-Action Waiver DRP and to inform employees that the acknowledgment is "simply an acknowledgment reflecting they received the updated DR program; *it is not an Agreement*."  *Id*. at Ex. 5 (emphasis added); *see also Id*. at Ex. 8.  Confusing Plaintiffs who were given no time to consult with counsel, Nordstrom also instructed the employees that "regardless of whether they sign [the acknowledgement, the [Class-Action Waiver DRP] applies to their employment effective immediately." *Id*. The gravity of Nordstrom's misleading statements to its employees that their signing of the Acknowledgement "is not an Agreement" to the Class-Action Waiver DRP is supported by the finding of a recent national study that "stunning majorities [of surveyed individuals] believe they have the right to sue should they be seriously harmed or have a major dispute arise – even if they are bound by forced arbitration terms." *Id*. at Ex. 10; *see also Id*. at Ex. 11. That "stunning" majority comprised of 72% to 79% of the survey participants.[3]  *Id*.

At the time Nordstrom instituted its blanket class-action waiver, at least one other putative class action, *Maraventano, et al v. Nordstrom, Inc.* Case No. 10cv2671 JM (WMc), was pending.[4] Based on this newly added class action waiver, Defendant now seeks to compel Plaintiffs into individual arbitration, and limit the putative class members in *Maraventano*.[5]

---

may not be precluded by arbitration agreements from bringing PAGA actions as "[t]he purpose of the PAGA is not to recover damages or restitution, but to create a means of 'deputizing' citizens as private attorneys general to enforce the Labor Code.").  The August 2011 dispute resolution modification excludes PAGA claims. Nordstrom's Motion is based on the August 2011 DRP.

[3]  Only a staggering 15% of survey participants understood the effect of signing arbitration agreements in an employment context. Shamtoub Decl. at Ex. 10.

[4]  The related case of, *Maraventano, et al v. Nordstrom, Inc*., Case No. 10cv2671 JM (WMc) was filed in San Diego Superior Court on October 18, 2010.  It has since been removed to the Southern District of California.

[5]  The proposed representative plaintiffs in *Maraventano* are former employees, and therefore unsusceptible to Nordstrom's new class action waiver.  Putative class members in *Maraventano*, however, include commission-based employees currently employed at Nordstrom.  Nordstrom maintains that putative class members currently employed at Nordstrom cannot participate in the *Maraventano* as class members, *See* Docket No. 18, even though Nordstrom introduced the new

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration          11-CV-2609 JM (WMc)

The clear purpose behind Nordstrom's inclusion of a class and collective action waiver is to destroy putative class members' entitlement to participate in these class actions, and to thereby discourage and restrict Plaintiffs' ability to enforce their rights by ramping up their individual costs.  *See* Declaration of Kathryn Lee Boyd ("Boyd Decl.") ¶ 10.

## III.    ARGUMENT

### A.    Nordstrom's Class Action Waiver Violates The NLRA

In the four-corners case, *D.R. Horton, Inc.*, 357 NLRB No. 184 (Jan. 3, 2012), the NLRB held that an arbitration agreement which barred employees as a condition of their employment from bringing collective or class claims in court or arbitration violated Section 7[6] of the NLRA, because it precluded "employees from exercising substantive rights that have long been held protected" by the NLRA.  *Id.* *4.  Section 7 of the NLRA provides in relevant part that employees shall have the right "to engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection…" 29 U.S.C. § 157.  "It is well settled that 'mutual aid or protection' includes employees' efforts to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship." *D.R. Horton,* 357 NLRB No. 184 *at *2.*

The NLRB recognized that the Norris-LaGuardia Act dictates that workers "'shall be free from the interference, restraint, or coercion of employers' in 'concerted activities for the purpose of collective bargaining *or other mutual aid or protection.*'" *Id.* (quoting 29 U.S.C. § 102; *see also United Parcel Service*, 252 NLRB 1015, 1018, 1022 fn. 26 (1980), enfd. 677 F.2d 421 (6th Cir. 1982) (class-action lawsuit alleging that employer failed to provide rest periods required by state statute was protected concerted activity).[7]  Thus, the NLRB held that "consistent with the

---

class action waiver after the *Maraventano* action was initiated and Nordstrom did not inform current employees of the pendency of *Maraventano* or this pending litigation.
[6] *See also Eastex, inc. v. NLRB*, 437 U.S. 556, 565-566 (1978) (Section 7 "protects employees from retaliation by their employer when they seek to improve their working conditions through resort to administrative and judicial forums.")
[7] The court notes that "[m]odern Federal labor policy" begins with the Norris-LaGuardia Act of 1932 and that "the NLRA, passed in 1935, built upon and expanded the policies reflected in the Norris-LaGuardia Act, echoing much of the language of the earlier law." p *Id.* *5-6 (quoting *National Woodwork Mfrs. Assn. v. NLRB*, 386 U.S. 612, 620 & fn.5 (1967) ("In construing the NLRA, we must 'reconstitute the gamut of values current at the time when the words [of the

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

terms and policy of the Norris-LaGuardia Act, an arbitration agreement imposed upon individual employees as a condition of employment cannot be held to prohibit employees from pursuing an employment-related class, collective, or joint action in a Federal or State court."  *D.R. Horton,* 357 NLRB No. 184 *at* *6.  "The arbitration agreement, insofar as it sought to prohibit a 'lawful means [of] aiding any person participating or interested in' the lawsuit [] such as pursuing or joining a putative class action – would be an 'undertaking or promise in conflict with the public policy' of the [Norris-LaGuardia Act]."  *Id.* (quoting 29 U.S.C. § 102).

Thus, a violation of the NLRA occurs where 1) an employee 2) attempting to exercise Section 7 rights – i.e., to engage in "concerted activities for the purpose of . . . mutual aid or protection" 3) is expressly restricted or would reasonably believe they are restricted from doing so as a condition of employment.  *Id.* *6.  In *D.R. Horton*, the NLRB therefore held that the class-action waiver arbitration agreement violated Section 7 because it explicitly restricted activity protected under Section 7 and employees would reasonably construe the rule to prohibit Section 7 activity.[8]  *Id* *7.  Likewise here, the Class-Action Waiver DRP violates NLRA Section 7 as it explicitly restricts Nordstrom employees from bring class actions and divests them of their substantive rights, specifically the historical and well-settled "'public policy of the United States' [that] observes that the 'individual unorganized worker is commonly helpless to exercise actual liberty of contract to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment.'" *Id.* *5 (quoting 29 U.S.C. § 102).

Indeed, there is no dispute that Plaintiffs are employees.  *See* Mtn. at 2; Arias Decl. (#39-2), ¶2; Gonzalez Decl. (#39-5), ¶2.  Second, filing a class action complaint against the employer for wage and hour violations, as Plaintiffs have done here, is protected section 7 activity.  "[E]mployees who join together to bring employment-related claims on a classwide or collective basis in court or before an arbitrator are exercising rights protected by Section 7 of the [National

---

statute] were uttered.'").

[8] "That this restriction on the exercise of Section 7 rights is imposed in the form of an agreement between the employee and the employer makes no difference." *Id.* *4; *see also J.I. Case Co. v. NLRB*, 321 U.S. 322 (1944) ("Individual contracts no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act.").

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Labor Relations Act ("NLRA")]." *D.R. Horton, Inc.*, 357 NLRB No. 184 at *3. "Clearly, an individual who files a class or collective action regarding wages, hours or working conditions, whether in court or before an arbitrator, seeks to initiate or induce group action and is engaged in conducted protected by Section 7." *Id*.[9] In fact, Defendant's own arbitration agreement concedes that filing a class action is a Section 7 activity, stating "employees will not be retaliated against, disciplined or threatened with discipline for their exercising rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class or collective action. . . . ." Shamtoub Decl. Ex. 4.

Third, the prohibition on filing or pursuing a class action is a condition of employment at Nordstrom. Here, Nordstrom's unilaterally drafted Class-Action Waiver DRP is a condition of employment. Declaration of Nune Nalbandian ("Nalbandian Decl.") ¶ 12; Declaration of Gina Balasanyan ("Balasanyan Decl.") ¶ 10. In addition, upon receipt, it is forcefully applied to all Nordstrom employees "effective immediately." Shamtoub Decl. Ex. 5, 8. Per its terms, even if an employee refused to sign the acknowledgement, and the following day elected to stop working for Nordstrom, because of the retroactive clause of Nordstrom's Class-Action Waiver DRP, that employee is barred not only from bringing a class action regarding events that took place well before the introduction of the Class-Action Waiver DRP, but also from joining pending class actions, such as this one. *Id*. at Ex. 4.

The class action waiver in Nordstrom's DRP clearly denies Plaintiffs' substantive federal rights under the NLRA and is therefore unenforceable.

---

[9] *See also Salt River Valley Water Users' Asso. v. NLRB*, 206 F.2d 325, 328 (9th Cir. 1953)(in holding that an employee was protected by Section 7 when he circulated a petition, despite the fact that a union represented the employees, that sought to confer a power of attorney on the employee to recover by court action or negotiation individual employee claims for back pay and overtime wages, the Ninth Circuit declared "concerted activities for the purpose of * * * mutual aid or protection are not limited to union activities"); *Le Madri Restaurant*, 331 NLRB 269, 275 (2000) ("the filing of a civil action by employees is protected activity unless done with malice or in bad faith"); *Brady v. National Football League*, 644 F.3d 661, 673 (8th Cir. 2011)("a lawsuit filed in good faith by a group of employees to achieve more favorable terms or conditions of employee *is* 'concerted activity' under § 7 of the [NLRA]."); *Mohave Elec. Co-op, Inc. v. NLRB*, 206 F.3d 1183, 1188 (D.C. Cir. 2000)(petition for injunction supported by fellow employees and co-signed by a coworker was protected concerted activity).

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

**B.** **Plaintiffs' Rights to Collective Action Under Federal Employment Law Are Consistent with the FAA and Not Precluded by *Concepcion***

As Plaintiffs' class claims are grounded in <u>federal</u> rights under the NLRA[10], *Concepcion*, which is concerned with the FAA's preemption of <u>state</u> law, does not apply.  *See generally Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011) (discussing preemption principles). "[C]ourts are not at liberty to pick and choose among congressional enactments." *Morton v. Mancari*, 417 U.S. 535, 551 (1974).  Rather, if there is any conflict – and here there is not – the Court must balance the policies behind two federal statutes.  *D.R. Horton* , while not binding, is persuasive federal authority holding there is no conflict between the NLRA and FAA, but even if there were, then the substantive rights under the NLRA outweigh concerns under the FAA.  *D.R. Horton* 357 NLRB No. 184 *at *12*.   It should be noted that the Department of Labor and EEOC filed amicus briefs in support of the position adopted by the Board.  *Id.* at *1, n. 1.   In addition, the Ninth Circuit "defer[s] to the [NLRB's] interpretation of the NLRA if it is 'reasonable and not precluded by Supreme Court precedent.'" *NLRB v. Advanced Stretchforming Int'l, Inc*., 233 F.3d 1176, 1180 (9th Cir. 2000) (quoting *Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers*, 861 F.2d 1124, 1134 (9th Cir. 1988) (en banc)).[11]   The holding in *D.R. Horton* is "reasonable and not precluded by Supreme Court precedent."  *Id.*

Further, in contrast to the Supreme Court's holding in *Concepcion*, which was grounded solely in the preemption by the FAA of state arbitration contract defenses, in *D.R. Horton*, the NLRB's holding was not based on "defenses that apply only to arbitration or that derive their

---

[10]  It is worth noting that class action waivers prohibit substantive rights, not mere procedural rights.  *D.R. Horton* 357 NLRB 184 at *10 (holding that "the Section 7 right to act concertedly by invoking Rule 23, section 216(b), or other legal procedures is not" a procedural rule).

[11]  *See also NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 89-90, 133 L. Ed. 2d 371, 116 S. Ct. 450 (1995) (the NLRB "often possesses a degree of legal leeway when it interprets its governing statute, particularly where Congress likely intended an understanding of labor relations to guide the Act's application"); *NLRB v. JLL Rest., Inc.*, 325 Fed. Appx. 577, 578 (9th Cir. 2009)(citing *Cal. Pac. Med. Ctr. v. N.L.R.B.*, 87 F.3d 304, 307 (9th Cir. 1996) ("We may overturn the Board's findings of fact only when they are not supported by substantial evidence in the record, or if the Board has not correctly applied the law."); *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 891 (1984) (interpretations of the Board, the agency that Congress "created . . . to administer" the Act, will be upheld if "reasonably defensible") (internal citation omitted); *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786 (1990) (Congress delegated to the Board "primary responsibility for developing and applying national labor policy"); *ABF Freight System, Inc. v. NLRB*, 510 U.S. 317, 324 (1994) (the Board's views are entitled to "the greatest deference").

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1    meaning from the fact that an agreement to arbitrate is at issue." *D.R. Horton* 357 NLRB No. 184

2    *at \*9.*   Rather, the decision rested on contractual restrictions on substantive rights that are

3    otherwise protected by federal law: "to find that an arbitration agreement must yield to the NLRA

4    is to treat it no worse than any other private contract that conflicts with Federal labor law."  *Id.*

5    Indeed, the Board reasoned that the class-action waiver would be held to "equally violate the

6    NLRA if it said nothing about arbitration, but merely required employees, as a condition of

7    employment, to agree to pursue any claims in court against the Respondent solely on an

8    individual basis." *Id.* Thus, *D.R. Horton* does not run afoul of Supreme Court precedent, even

9    *Concepcion.  See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982)("The Board is vested with

10   primary jurisdiction to determine what is or is not an unfair labor practice. As a general rule,

11   federal courts do not have jurisdiction over activity which is arguably subject to § 7 or § 8 of the

12   NLRA, and they must defer to the exclusive competence of the National Labor Relations

13   Board.")(Internal citations omitted).

14        Moreover, pursuant to the FAA, arbitration agreements may be invalidated upon any

15   "grounds as exists at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Here, a

16   defense to the enforcement of a contract is that a term of the contract conflicts with <u>federal</u> public

17   policy (as opposed to state public policy in issue in *Concepcion*).  *See Kaiser Steel Corp*, 455

18   U.S. at 83-84 (determining the enforcement of a contract in light of the public policy of the

19   NLRA).  "Courts presented with such a defense apply a balancing test: where the interest in favor

20   of enforcing a contract term is outweighed by a public policy against enforcement, the term is

21   unenforceable." *D.R. Horton* 357 NLRB No. 184 at \*11; *see also* Restatement (2d) of contracts §

22   178(1).   The court's interpretation is guided by considerations of "the strength of the public

23   policy as manifested by legislation" and "the likelihood that a refusal to enforce the terms will

24   further that policy."  *Id.*  (quoting Restatement (2d) of contracts § 178(3).  In apply this balancing

25   test, the Board in *D.R. Horton* reasoned:

26

27                     Section 7 of the NLRA manifests a strong federal policy protecting
                     employees' right to engage in protected concerted action, including
28                     collective pursuit of litigation or arbitration.  Moreover, Section

> 8(a)(1) and other provisions of the NLRA derive from the earlier Norris-LaGuardia Act manifest a strong federal policy against agreements in the nature of yellow-tag contracts, in which individual employees are required, as a condition of employment, to cede their right to engage in such collective action.  A refusal to enforce the [] class-action waiver would directly further these core policies underlying the NLRA.

*Id.* at *11; *see also Vimar Seguros y Reaseguros SA v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995)(holding that, if an arbitration provision were to operate "as a prospective waiver of a party's right to pursue statutory remedies….,we would have little hesitation in condemning the agreement as against public policy").

Finally, even if the FAA were in direct conflict with the NLRA (and it is not), "there are strong indications that the FAA would have to yield under the terms of the Norris-LaGuardia Act" as the Norris-LaGuardia Act passed seven (7) years after the FAA and "repealed '[a]ll acts and parts of acts in conflict' with it." *D.R. Horton* 357 NLRB No. 184 at *12; *see also Radzanower v. Touche Ross & Co*., 426 U.S. 148, 154 (1976)(holding that when two federal statutes conflict, the later enacted statute must be understood to have impliedly repealed inconsistent provisions in the earlier enacted statute").

Accordingly, Nordstrom's Class-Action Waiver DRP is unenforceable as it violates the NLRA and federal policy; such a holding is not in conflict with the FAA; and the motion should be denied.

**C.     <u>Nordstrom's DRP, Unilaterally Imposed On Putative Class Members After Commencement Of This Litigation, Is Unenforceable As a Matter of Federal Law, Because It Is An Improper Communication With Putative Class Members</u>**

After *Concepcion*, the district court in *Williams v. Securitas Sec. Servs. USA, Inc*., 2011 U.S. Dist. LEXIS 75502 *3 (E.D. Pa. July 13, 2011), held unenforceable a class action waiver provision which was imposed by the defendant employer <u>after</u> employees filed a putative class action claiming violation of the FLSA, based on the fact that it was an improper communication with putative class members. Federal courts restrict communications with putative class members that are potentially coercive or misleading.  *See In re School Asbestos Litigation*, 842 F.2d 671, 680 (3d Cir. Pa. 1988) ("Misleading communications to class members concerning the litigation

pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally."); *see also* Fed. R. Civ. P. 23(d).

When a defendant contacts putative class members for the purpose of altering the status of a pending litigation, without judicial authorization, such communication is improper. *See Hampton Hardware v. Cotter & Co.,* 156 F.R.D. 630, 632 (N.D. Tex. 1994) (noting that defendant's communications affecting a class member's decision to participate in the litigation are improper). Similarly, post litigation modifications of arbitration clauses that provide retroactively applicability and thereby limit putative class members' participation in pending litigation, are improper and, therefore, unenforceable. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), rev'd on other grounds (refusing to enforce class action bans mailed by creditor to members of putative class).[12]

In *Williams*, the defendant distributed to all its employees, including plaintiffs, a dispute resolution program, in which defendant informed employees "in small bold font" that "there will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or representative action." *Williams*, 2011 U.S. Dist. LEXIS 75502 at *3. Similar to Nordstrom's Class-Action Waiver DRP, the *Williams* defendant required employees to sign an acknowledgment of receipt. *Id*. at *5. Although, unlike here, the *Williams* defendant's post-litigation dispute resolution program was less strong-arm as it (1) informed employees of the pending class action litigations, (2) specifically excluded named plaintiffs in those actions, and (3) gave all employees the opportunity to participate in any one of the pending actions by opting out of the dispute resolution agreement. *Id*. at *3-4.

Notwithstanding the *Williams* defendant's notice to employees of pending class actions,

---

[12] *Compare Long v. Fidelity Water Sys., Inc.*, 2000 U.S. Dist. LEXIS 7827 at 3 (N.D. Cal. May 24, 2000)(declining to enforce arbitration clause added to credit card contracts nearly one year after class action was filed, because defendants "gave no notice to [the plaintiff] that if he opted for the arbitration provision, he could not participate in the pending class action"), *with Laster v. T-Mobile USA, Inc*., 2008 U.S. Dist. LEXIS 103712 (S.D. Cal. Aug. 11, 2008), rev'd on other grounds (permitting post litigation modification to arbitration agreement only where "the initial [agreement] contained an arbitration clause and class action waiver, as did each and every [agreement] entered into by the [Plaintiffs] before the [] revision" and holding that "[t]his unilateral change did not add a new term; it merely modified an old one…and the terms of arbitration also were modified more favorably to Plaintiffs").

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1   exclusion of named plaintiffs and option to opt-out of the arbitration agreement – none of which

2   was done by Nordstrom – the court held that the post litigation arbitration agreement was "likely

3   to cause confusion to potential class members." *Id.* at *7. The court reasoned that the arbitration

4   agreement's failure to require employees' signature to become effective would reasonable lead

5   employees to believe they are not bound by the terms of the agreement. *Id.* The court also

6   reasoned that the "paragraphs and sentences are long and complex with heavy use of legal

7   jargon." *Id.* at *7-8.  Finally, the court reasoned that although defendant identified the pending

8   litigation by name in the agreement, this identification alone was insufficient as "the nature of the

9   action is not explained." *Id.* at *8,

10       Similar to *Williams*, at the time Nordstrom introduced its Class-Action Waiver DRP, in

11   addition to this action at least one other putative class action, *Maraventano, et al v. Nordstrom,*

12   *Inc.* Case No. 10cv2671 JM (WMc), was pending before California courts.  However, unlike

13   *Williams*, Nordstrom did not disclose the existence of these class actions to putative class

14   members. Shamtoub Decl. Ex. 4. Nor, did Nordstrom give putative class members an option to

15   opt-out of the post litigation arbitration agreement. *Id.* Nor, did Nordstrom exclude the Plaintiffs

16   from its post litigation arbitration agreement. *Id.* In fact, as in *Williams*, Nordstrom confused and

17   mislead putative class members by informing them that by signing an acknowledgment of receipt

18   of the Class-Action Waiver DRP it did not mean they were entering into an agreement.  *Id.* at Ex.

19   5, 7-9. Nordstrom further confused Plaintiffs and putative class members by using paragraphs and

20   sentence that are "long and complex with heavy use of legal jargon." *Id.* at Ex. 5.

21       Accordingly, Nordstorm's Class-Action Waiver DRP is a deceptive and improper

22   communication with putative class members, and should not be enforced.  *See Carnegie v. H&R*

23   *Block, Inc.*, 687 N.Y.S.2d 528, 532 (N.Y. Sup. Ct. 1999) (refusing to enforce arbitration clause

24   that prohibited class-wide relief as to existing claims, because those who signed the agreement

25   "were completely unaware of this litigation and that by signing the [loan agreement] form, they

26   were waiving their right to participate in this class action" and holding that defendants' failure to

27   disclose the pendency of the class action is "patently deceptive").

28

*Concepcion* is not to the contrary. In *Williams,* the court disagreed with defendants' contention that the court's determination conflicted with the Supreme Court's holding in *Concepcion.  Williams*, 2011 U.S. Dist. LEXIS 75502 at *9. In refusing to accept defendant's argument, the court reasoned that in *Concepcion* "the Court considered California contract law, which deemed unconscionable certain contracts that disallowed class arbitration" and ultimately held that the law at dispute "impermissibly stood as an obstacle to the accomplishment of the FAA's objectives." *Id*. The court held that defendant's reliance on *Concepcion* was "inapposite" because the court's determination did not rely on any state-law ground to invalidate the arbitration agreement at dispute.  *Id*. at *10. Rather, the court reasoned that its holding is based on the fact that the arbitration agreement is "a confusing and unfair communication with the class of possible plaintiffs." *Id*. The same reasoning applies here.  *See H&R Block, Inc. v. Haese*, 82 S.W.3d 331, 333, 336 (Tex. App. 2002) (class action ban added to agreement after class action was filed "constituted an unauthorized, impermissible, knowing and intentional communication with members of the plaintiff class" that "was calculated to reduce class participation and to obstruct the trial court in the discharge of its duty to protect the absent class").

### D.  *Concepcion* **Is Consistent with** *Gentry*

The FAA protects the rights of parties to agree to resolve statutory claims in an arbitral forum so long as the prospective litigant "does not forgo the substantive rights afforded by the statute." *Gilmer v. Interstate/Johnson Lane Corp*., 460 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985));  *see also EEOC v. Waffle House, Inc*., 534 U.S. 279, 295 n.10 (2002) (statutory claims may be arbitrated as long as a party can vindicate her substantive rights); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) ("[C]laims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum'") (citation omitted); *Sutherland v. Ernst & Young, LLP*, 2011 U.S. Dist. LEXIS 26889 *19 (S.D.N.Y. March 3, 2011) (refusing to enforce a class action waiver that would have the effect of immunizing the defendant from labor laws because no

plaintiff would have sufficient incentive to pursue a claim).[13] The principles espoused in *Mitsubishi* apply with equal force here, where Plaintiffs are attempting to enforce statutory rights. *See Booker v. Robert Half Int'l*, 413 F.3d 77, 82 (D.C. Cir. 2005) (in striking down a provision in an arbitration clause that stripped a party of state statutory rights, the hold held that a party may "resist[] arbitration on the ground that the terms of any arbitration agreement interfere with the effective vindication of statutory rights").

In fact, California law holding arbitration clauses unenforceable when they prevent the parties from vindicating their statutory rights is entirely consistent with federal law – particularly here where federal law provides rights to employees to engage in collective and class employment claims. *See Green Tree Fin. Corp.*, 531 U.S. at 92 ("[A] party seek[ing] to invalidate an arbitration agreement … bears the burden of showing" that the clause would prevent her from vindicating her statutory rights.").

*Gentry v. Superior Court*, 42 Cal. 4th 443 (Cal. 2007) established measurable factors from which California courts can determine whether an arbitration clause violates protected substantive rights. Such a state-law rule would not "stand[] as an obstacle to the accomplishment" of any congressional purpose. *Concepcion*, 131 S. Ct. at 1753.[14]   In

---

[13] There is no question that the *Mitsubishi* line of cases, which protect substantive rights in the face of encroaching arbitration agreements, remains good law. *See Concepcion*, 131 S.Ct. at 1748 (citing *Mitsubishi Motors*); *Id.* at 1749 n.5 (citing *Gilmer*). Thus, the principle that parties must be able to effectively vindicate their statutory rights in arbitration was not overruled by *Concepcion* and remains intact. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997)(lower courts may not "conclude our more recent cases have, by implication, overruled an earlier precedent" and must "leav[e] to this Court the prerogative of overruling its own decisions"); *Rodriguez de Quijas v. Shearson/American Exp., Inc*., 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [a lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

[14] *Gentry* has not been overruled by either the Ninth Circuit or the State or Federal Supreme Court. However, courts are split in their application of *Gentry* post *Concepcion*. *Compare Brown v. Ralphs Grocery Co.,* 197 Cal. App. 4th 489 (Cal. Ct. App. 2011) (remanded to the trial court with directions to conduct further discovery on whether the *Gentry* test was satisfied); *Plows v. Rockwell Collins, Inc*., 2011 U.S. Dist. LEXIS 88781*4-5 (C.D. Cal. Aug. 9, 2011) (acknowledging Gentry as valid law by distinguishing employment contracts from consumer contracts and finding employees may not be precluded by arbitration agreements from bringing representative PAGA actions as "[t]he purpose of the PAGA is not to recover damages or restitution, but to create a means of 'deputizing' citizens as private attorneys general to enforce the Labor Code."), *with Morse v. ServiceMaster Global Holdings, Inc.,* 2011 U.S. Dist. LEXIS 82029 *3 n.1 (N.D. Cal. July 27, 2011) (noting that even if Concepcion did not explicitly overrule

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1   *Concepcion*, the Supreme Court was called to determine whether the FAA would preempt state

2   law that would invalidate a class action ban where classwide treatment is "*not necessary* to ensure

3   that the parties to the arbitration agreement are able to vindicate their claims."  Petition for Writ

4   of Certiorari, *AT&T Mobility, LLC v. Concepcion*, no. 09-893 (U.S. Jan. 25, 2010) 2009 U.S.

5   Briefs 893, at *I. (emphasis added).  Based on the particular facts of the case,[15] the Court in

6   *Concepcion* held that the state law at issue, *Discover Bank v. Superior Court*, 36 Cal. 4th 148,

7   159 (Cal. 2005), violated the FAA.  *Concepcion*, 131 S. Ct. at 1750.  Rights under the NLRA – or

8   any federal law – of course, were not in issue in the *Concepcion* case or the *Discover Bank* case.

9          The doctrines set forth in *Discover Bank* and *Gentry* are "two separate tests which should

10  be considered separately."  *Arguelles-Romero v. Superior Court*, 184 Cal. App. 4th 825, 836-837

11  (Cal. App. 2d Dist. 2010).  *Discover Bank* established an unconscionability analysis that was

12  applied solely to enforcement of arbitration agreements.  *Id*; *Concepcion*, 131 S. Ct. at 1746.  In

13  contrast, and in line with established Supreme Court precedent*, Gentry* "is concerned with the

14  effect of a class action waiver on unwaivable statutory rights *regardless of unconscionability*."  *Id.*

15  (emphasis in original).  Indeed, if *Concepcion* had intended to establish a rule that class waivers

16  were enforceable regardless of their effect on substantive statutory rights – and thereby overrule

17  the principles underlying *Gentry* – it would also have had to confront and overrule a quarter-

18  century of Supreme Court precedent, including *Mitsubishi*, *Gilmer*, *Green Tree* and *Waffle*

19  *House*.  The fact that *Concepcion* did not take this step speaks to the limitations of its holding.

20

21

22  _____
    Gentry, it rejected the reasoning and precedent behind it).
23  [15] Unlike the matter at hand, in *Concepcion* there was no factual record establishing that
    plaintiffs' statutory rights could not be vindicated in arbitration.  *Concepcion*, 131 S. Ct.. at 1748.
24  The only fact presented to the Court was the arbitration clause itself, which the Court determined
    was fair based on the incentives given to customers.[15]  Indeed, the district court in *Concepcion*
25  reasoned that the incentives for individual arbitration in AT&T's clause would leave the plaintiffs
    "better off…than they would have been as participants in a class action," and the Ninth Circuit
26  "admitted that aggrieved customers who filed claims would be 'essentially guaranteed' to be
    made whole." *Id.* at 1753 (citation omitted).  Accordingly, and based on the particular facts of
27  *Concepcion*, the Supreme Court held that the claim at issue in *Concepcion* was "most unlikely to
    go unresolved" and therefore no substantive right would go unvindicated.  *Id* at 1753.  Moreover,
28  unlike the present litigation, *Concepcion* did not involve an employment agreement or rights
    protected by the NLRA.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration        11-CV-2609 JM (WMc)

E.      **Nordstrom's Class-Action Waiver DRP Fails under the *Gentry* Factors**

The *Gentry* cases sets forth several factors which, if present, can establish a situation in which a class action waiver would undermine the enforcement of the unwaivable statutory right, including: (1) individual awards tend to be modest; (2) suing poses a risk of retaliation; (3) claimants may not bring individual claims because they are unaware that their legal rights have been violated; and (4) even if some individual claims are sizeable enough to provide an incentive for individual action, it may be cost effective for a defendant to pay those judgments and continue the allegedly violative conduct. *Gentry*, 42 Cal. 4th at 457, 459, 461, 462.  The *Gentry* factors do not constitute an "absolute four-part test." *Arguelles-Romero*, 109 Cal.App.4th at 840.  Rather, these factors must be considered along with "other real world obstacles to the vindication of class members" unwaivable statutory rights - to determine whether class arbitration, as opposed to individual litigation or arbitration, is a more effective practical means of vindicating rights: "If [the trial court] concludes, based on these factors, that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can vindicate [their] unwaivable rights in an arbitration forum." *Gentry*, 42 Cal. 4th at p. 463 (citation omitted).

1.      **Claimants Lose Rights to Even Individual Claims Because They Are Unaware That Their Rights Have Been Violated**

The present action involves wage and hour violations that are not immediately apparent or typical.  Essentially, Nordstrom docks its commission based employees incremental daily wages by requiring them to clock in as commission employees during times where they cannot make any commission – for instance, when the Nordstrom location has not opened for business yet or the employee is on stock assignment and away from the sales floor.  Docket No. 46.  Nordstrom's wage and hour violation is crafty and, thereby, easily undetectable by an average worker who is not well versed in labor rights.   As such, most Nordstrom employees do not even know that their

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

rights are being violated.  Indeed, had it not been for a Nordstrom employee who was a law student, Plaintiffs would not themselves have known that Nordstrom's conduct was in violation of Federal and State labor laws.  Nalbandian Decl. ¶ 7; Balasanyan Decl. ¶ 7.  This particular Nordstrom employee, whose identity Plaintiffs feel compelled not to disclose so as not to jeopardize this person's current or future employment prospects with Nordstrom, informed Plaintiff Nalbandian that Nordstrom's policy of not paying commission based employees for Non-Sell Periods violates labor laws.  *Id*. Had it not been for this "tip-off" from a law student, Plaintiffs would not have known that their legal rights were being violated by Nordstrom.  *Id*.

### 2.   Suing Poses a Risk of Retaliation

Nordstrom, similar to most employees, are generally unwilling to step forward on their own, as they are often unaware of their rights, yet acutely aware of exposing themselves to retaliation.  Notwithstanding this person's higher education level, and greater prospective employment options, Plaintiffs elected not to inform her/him because they feared she/he would inform Nordstrom and Nordstrom would take retaliatory action against Plaintiffs.  Nalbandian Decl. at ¶ 7-8.  Plaintiffs further decided not to disclose this lawsuit to any of their coworkers so as to prevent their store location managers and human resources department from learning of the lawsuit and retaliating against them. *Id*. Indeed, Plaintiffs' suspicions were correct; following Nordstrom's disclosure of the lawsuit to certain management employees Plaintiffs have been met with hostility. *Id*. at ¶ 9; Balasanyan Decl. ¶ 14. They find their every move hyper scrutinized and alienated from fellow employees that do not want to be associated with them for fear of employment retaliation. *Id*.; *Mitchell v. DeMario Jewelry* 361 U.S. 288, 292 (1960) ("[I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.").

### 3.   Individual Awards Tend To Be Modest And Class Members Face Other Real World Obstacles To The Vindication Of Their Rights

Even if employees are willing to step forward individually and initiate arbitration, they face obstacles in vindicating their rights, including finding willing and able counsel.  Boyd Decl.¶ 6.  The modest size of Plaintiffs' individual recovery, which is estimated at $3,000-$4,500 per

year, is a significant economic deterrent for attorneys, as even a full recovery would not adequately compensate attorneys for their fees and the costs of prosecuting the arbitration, particularly given the complexity of wage and hour litigation. *Id.* ¶¶ 5-7.

Indeed, Nordstrom's discovery responses support the position that the potential modest size of a plaintiff's recovery impacts whether they are represented by counsel, and, thereby, ultimately, whether their individual rights have been vindicated to the full extent of the law. Since 2008, twelve (12) nonarbitrable actions were initiated against Nordstrom. Shamtoub Decl. Ex. 6. Six of those actions are court proceedings and all, but one, are putative class actions.[16] *Id.* Five (5) proceedings were before the Division of Labor Standards Enforcement ("DLSE") and one (1) was brought in small claims court. *Id.* Of the five (5) DLSE claims, one was voluntarily abandoned and brought as a class action litigation in court. *Id.* In all of the remaining DLSE and small claims matters, Nordstrom does not identify that *any* of the plaintiffs in DLSE or small claims proceedings were represented by counsel.[17] *Id.* In every single court proceeding, plaintiffs were represented by counsel. *Id.* As expected, nearly all of the DLSE and small claims matters sought modest damages – lower than $4000.00.[18] *Id.*

**4. Even If Some Individual Claims Are Sizeable Enough To Provide Incentive For Individual Action, Nordstrom Is Incentivized to Pay Those Judgments And Continue Its Violative Conduct**

Nordstrom has more than 225 U.S. stores located in 29 states. Notwithstanding its sizable workforce, Nordstrom reveals that from January 2008 to the present no commission-based sales employees have initiated any wage and hour action against it in arbitration. *Id.* In that same time period, five (5) wage and hour class actions have been filed, four (4) of which – including Plaintiffs action – are still pending before the courts.[19] *Id.* If Nordstrom is permitted to eliminate

---

[16] Nordstrom represents that it "has not been served" with the one non putative class action. Shamtoub Decl. Ex. 6.

[17] Nordstrom solely identifies the abandoned DLSE claimant as being represented by counsel. *Id.* Nordstrom represents that it does not know whether plaintiffs in the other DLSE proceedings were represented by counsel, and the plaintiff in the small claims matter was not represented by counsel. *Id.*

[18] The one exception is a DLSE claim which sought $17,129.72 in damages. *Id.*

[19] One putative class action was dismissed with prejudice by Plaintiff. In addition, one non putative class action has been filed, but Nordstrom "has not been served." *Id.*

all collective and class actions it will ensure that only incremental claims, similar to the claims brought in the DLSE, are asserted against it.  And, based on the history of wage and hour arbitration proceedings initiated against it, it is highly likely that absolutely *no* arbitration proceedings will be brought against Nordstrom, notwithstanding the fact that Nordstrom has been alleged in at least five separate recent class actions to have engaged in wage and hour violations.

For these reasons, class actions are "likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration" and "the disallowance of the class action will likely lead to a less comprehensive enforcement of [wage and hour] laws for the employees alleged to be affected by the employer's violations." *Gentry*, 42 Cal. 4th at p. 463 (citation omitted); *see also* Boyd Decl. ¶¶ 8-10.  Accordingly, the Court "must invalidate the class [action] waiver to ensure that these employees can vindicate [their] unwaivable rights." *Gentry*, 42 Cal. 4th at p. 463.

### F.   Generally Applicable Contract Principles Preclude Enforcement of Nordstrom's Class Action Waiver DRP

In *Concepcion*, the Supreme Court specifically reaffirmed that the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' [although] not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996); *see Newton v. Clearwire Corp.*, 2011 U.S. Dist. LEXIS 108794 *13  (E.D. Cal. Sept. 22, 2011)  ("Even in the wake of the decision in *Concepcion*, however, arbitration agreements are still subject to unconscionability analysis."); *Hamby v. Power Toyota Irvine*, 2011 U.S. Dist. LEXIS 77582 (S.D. Cal. July 18, 2011) (permitting discovery on unconscionability as a generally applicable contract defense after *Concepcion* because "[*Concepcion*] does not stand for the proposition that a party can never oppose arbitration on the ground that the arbitration clause is unconscionable"). "[I]n assessing whether an arbitration agreement or clause is enforceable, the Court should apply ordinary state-law principles that govern the formation of contracts." *Newton*, 2011 U.S. Dist. LEXIS 108794 at *15.

Despite the liberal policy favoring arbitration, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Newton*, 2011 U.S. Dist. LEXIS 108794 (*citing Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). Therefore, "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2" of the FAA. *Doctor's Associates, Inc*., 517 U.S. at 687.

### 1.   Defendant Has Failed to Meet Its Burden of Establishing the Existence of a Valid Arbitration Agreement

"The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972 (Cal. 1997), cited in Def. Mtn. at 8. Defendant concedes that as a threshold matter it must prove four elements of a contract, but it has failed to show three of the four elements: "(2) there was mutual consent, (3) the contract had a lawful object, and (4) the contract was supported by sufficient cause or consideration." *See* Motion at 6, citing Cal. Civ. Code § 1550.

Nordstrom fails to present sufficient evidence establishing mutual consent or consideration. *Hadlock v. Norwegian Cruise Line, Ltd.,* 2010 U.S. Dist. LEXIS 39247 (C.D. Cal. 2010) ("When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56.") Nordstrom asserts that there was implied-in-fact consent and sufficient consideration because Plaintiffs continued to work for Nordstrom following the introduction of the Class-Action Waiver DRP. However, none of the cases cited by Nordstrom support a unilateral *retroactive* change that strips employees of benefits previously had. *See Kempf v. Barrett Bus. Servs., Inc.,* 2007 U.S. Dist. LEXIS 86115, 18 (N.D. Cal. July 31, 2007) (holding that *Craig v. Brown & Root*, 84 Cal. App. 4th 416, 420 (Cal. App. 2d Dist. 2000) – authority cited by Nordstrom – does not address retroactive changes to parties agreements and that "[a]n employer may also modify the employment contract so long as the modification applies only prospectively"). Furthermore, continued employment has been held to constitute assent and/or consideration only when the change to the employment agreement benefits the employee, or at the very least does not divest employees of rights previously had. *See e.g. Newberger v.*

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

*Rifkind*, 28 Cal. App. 3d 1070, 104 Cal.Rptr. 663, 667 (1972) (holding that the policy favoring the treatment of modifications as offers of new unilateral contracts was appropriate where employees received more or better benefits); *Asmus v. Pacific Bell*, 23 Cal. 4th 1 (Cal. 2000)(upheld implied acceptance to changes employer's policies because "[t]he company also did not at any time interfere with employees' vested benefits in effecting the" new policy).

Here, the Class-Action Waiver DRP explicitly divests Plaintiffs of their right to continue their pending litigation, and divests putative class members from their entitlement to join one or more of the five (5) pending class action litigations.  Thus, not only did Plaintiffs and putative class members gain no benefit from the Class-Action Waiver DRP, they did not consent because, without disclosure, it applied retroactively to strip them of their entitlement to join the pending class actions.  Shamtoub Decl. Ex. 7-9; Nalbandian Decl. ¶ 13;*see Kempf*, 2007 U.S. Dist. LEXIS 86115 at *18-19 (holding that there was not sufficient consideration to justify the retroactive adjustment of employee's compensation because the adjustment was not to the employees advantage); *see also Long*, 2000 U.S. Dist. LEXIS 7827 at *9 (holding that "[t]he fact that [an individual] was a putative class member at the time defendants communicated with him also weakens any argument that he knowingly and voluntarily entered into an arbitration agreement").

Finally, because the entire effect of the modification of the DRP was the elimination of the class action remedy, the only purpose of the change was to restrict Plaintiffs' right to concerted action in violation of Section 7 of the NLRA. *See* Section III(A), *supra*.  Therefore, there is no "lawful object" of the contract.  Cal. Civ. Code § 1550.

As Defendant has failed to show three of the four elements sufficient to prove the existence of an agreement, the Class-Action Waiver DRP must be held unenforceable.

### 2.     Nordstrom's Class Action Waiver DRP is Unconscionable

Even if a valid arbitration agreement were found to exist (and it does not), the Class Action Waiver DRP is unconscionable, as a matter of law.  A finding of unconscionability in California requires both procedural and substantive elements. *Newton*, 2011 U.S. Dist. LEXIS 108794 at *18. Both forms of unconscionability must be present in order to invalidate a contract

due to unconscionability, but they need not be present in equal parts. *Id*. California courts apply a "sliding scale" analysis in making this determination: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Unimax Express, Inc. v. Cosco N. Am., Inc.*, 2011 U.S. Dist. LEXIS 136110, 8-9 (C.D. Cal. Nov. 28, 2011).

### *(a) The Class Action Waiver Is Procedurally Unconscionable*

Procedural unconscionability is satisfied if the agreement constitutes a contract of adhesion consisting of inequality of bargaining power and an absence of real negotiation or meaningful choice on the part of the weaker party. *Kinney v. United HealthCare Services, Inc*., (1999) 70 Cal. App. 4th 1322, 1329; *Newton*, 2011 U.S. Dist. LEXIS 108794 at *15 ("The procedural element [of unconscionability] focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms."). When a contract is found to be oppressive, awareness of its terms or lack of surprise does not preclude a finding of procedural unconscionability. *Abramson v. Juniper Networks, Inc*., 115 Cal. App. 4th 638, 663 (Cal. 2004).

The Class-Action Waiver DRP is a contract of adhesion. There is an absence of real negotiation or meaningful choice because Plaintiffs and putative class members were not permitted to modify or negotiate the Arbitration Policy. Shamtoub Decl. ¶¶ 7-9; Nalbandian Decl. ¶ 10. The Class-Action Waiver DRP is a take-it-or-leave-it agreement without a choice of opting out. Shamtoub Decl. ¶ 4; *Palmer v. Infosys Techs., Ltd*., 2011 U.S. Dist. LEXIS 130104 (M.D. Ala. Nov. 9, 2011) (holding that arbitration agreement is a contract of adhesion where it was required as a condition of employment because "was a 'take-it or leave-it requirement' of employment") (citing *Armendariz v. Foundation Health Psychcare Services, Inc*., 6 P.3d 669, 690 (Cal. 2000); *Saincome v. Truly Nolen of Am., Inc*., 2011 U.S. Dist. LEXIS 85880 (S.D. Cal. Aug. 3, 2011) (in employment action "under California law, the Agreement was a contract of adhesion,

1     satisfying the procedural element of the unconscionability inquiry").

2         Moreover, even though the Class-Action Waiver DRP was introduced by Nordstrom post-

3 filing of litigation, Nordstrom did not inform Plaintiffs' counsel of the arbitration agreement, nor

4 did Nordstrom inform Plaintiffs of the impact of the arbitration agreement on their pending

5 litigation. Nalbandian Decl. ¶ 11; Balasanyan Decl. ¶ 11.  Indeed, because counsel for Plaintiffs

6 was informed of the Class-Action Waiver DRP after Plaintiff Balasanyan was required to sign the

7 acknowledgment of receipt, Plaintiffs counsel was not afforded an opportunity to advise their

8 client regarding the impact of the Class-Action Waiver DRP.  Balasanyan Decl. ¶ 11.  Plaintiff

9 Nalbandian, who was on disability leave at the time the Class-Action Waiver DRP was handed to

10 Nordstrom employees, refused to sign the acknowledgement. Nalbandian Decl. ¶ 10. In addition,

11 Plaintiff Nalbandian intended to write a qualifying statement on the acknowledgment form that

12 the Class-Action Waiver DRP did not apply to her pending litigation, but her HR department did

13 not give her this opportunity. *Id*.

14         Nordstrom's Class-Action Waiver DRP presents Plaintiffs no option other than to accept

15 its terms, as rejection can only be had by ceasing employment with Nordstrom.  *See Armendariz*,

16 6 P.3d at 690 ("few employees are in a position to refuse a job because of an arbitration

17 requirement"); *Ferguson v. Countrywide Credit Indus., Inc*., 298 F.3d 778, 784 (9th Cir. 2002)

18 ("whether the plaintiff had an opportunity to decline the defendant's contract and instead to enter

19 into a contract with another party that does not include the offending terms is not the relevant test

20 for procedural unconscionability).  Notwithstanding Plaintiffs' commitment to this lawsuit,

21 Plaintiffs simply cannot afford to lose their job, and thereby their economic livelihood.

22         Nordstrom's failure to inform putative class members of pending class actions further

23 supports a determination of procedural unconscionability. By making broad neutral statements

24 about the change in its arbitration agreement, without notifying putative class members of

25 pending class actions and that the Class-Action Waiver DRP would directly impact Nordstrom's

26 employees ability to participate in these actions, Nordstrom created a situation in which the real

27 "terms of the bargain are hidden"  from putative class members. *See Newton*, 2011 U.S. Dist.

28

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1  LEXIS 108794 at *15 ("The procedural element [of unconscionability] focuses on two factors:

2  oppression and surprise … Surprise involves the extent to which the supposedly agreed-upon

3  terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce

4  the disputed terms."); *see also Saincome*, 2011 U.S. Dist. LEXIS 85880 at *18-19 (**"**However, the

5  Ninth Circuit has also found that broad, facially neutral agreements to arbitrate in the employment

6  context are in actuality far more likely to inure to the benefit of the employer: Because the

7  possibility that [the employer] would initiate an action against one of its employees is so remote,

8  the lucre of the arbitration agreement flows one way: the employee relinquishes rights while the

9  employer generally reaps the benefits of arbitrating its employment disputes").

10       Accordingly, the Class-Action Waiver DRP is severely procedurally unconscionable.

11  *(b) The Class Action Waiver Is Substantively Unconscionable*

12       In considering substantive unconscionability, the court should inquire "whether the term is

13  one-sided and will have an overly harsh effect on the disadvantaged party."  *Pokorny v. Quixtar,*

14  *Inc.*, 601 F.3d 987, 997 (9th Cir. 2010); *see Newton*, 2011 U.S. Dist. LEXIS 108794 at *18

15  ("[that] the results obtained in arbitration proceedings are overly harsh or unjustifiably one-sided

16  is clearly relevant to plaintiff's claim that this arbitration clause is unconscionable.").  Such an

17  inquiry requires courts to look beyond the face of the arbitration agreement. *Ting v. AT&T*, 319

18  F.3d 1126, 1149 (9th Cir. 2003) ("In determining whether an arbitration agreement is sufficiently

19  bilateral, courts assessing California law look beyond facial neutrality and examine the actual

20  effects of the challenged provision."); *Bolter v. Superior Court*, 87 Cal. App. 4th 900, 907 (2001)

21  ("a claim of unconscionability often cannot be determined merely by examining the face of a

22  contract, but will require inquiry into its commercial setting, purpose, and effect").

23       Here, the Class-Action Waiver DRP is indisputably "one-sided" and has an "overly harsh

24  effect on the disadvantaged party" as Nordstrom unilaterally drafted the Class-Action Waiver

25  DRP and forced it on all current Nordstrom employees – including plaintiffs in this pending class

26  actions – *after* at least two class action litigations had been initiated.  Moreover, Nordstrom

27  reveals in its discovery responses that, including Plaintiffs' action, there are a total of five (5)

28

class action litigations currently pending. Shamtoub Decl. Ex. 6.   Notwithstanding this knowledge, Nordstrom did not inform putative class members of the existence of this pending litigation, and that the Class-Action Waiver DRP divests them of their entitlement to join these cases. Shamtoub Decl. Ex. 4, 7-9; Nalbandian Decl. ¶ 11. Nor, did Nordstrom inform Plaintiffs or their counsel – even though Nordstrom knew Plaintiffs were represented by counsel in this action – that the Class-Action Waiver DRP would force them out of court and into individual arbitration. Nalbandian Decl. ¶ 11; Balasanyan Decl. ¶ 11; Boyd Decl. ¶ 12.

Nordstrom's decisive silence underscores the fact that the Class-Action Waiver DRP solely serves to benefit Nordstrom, at the expense of its working class employees. The Class-Action Waiver DRP not only prevents Plaintiffs from pursing this pending litigation, it significantly lessens the number of putative class members that are entitled to join the four (4) remaining putative classes.[20] Boyd Decl. ¶ 10. Furthermore, since in the past four years commission based employees have not initiated *any* individual wage and hour arbitration proceeding against Nordstrom, Shamtoub Decl. Ex. 6, by instituting the Class-Action Waiver DRP Nordstrom can ensure the future "one-sided" benefit of not only having no arbitration proceedings but also having no class action litigations. On the other hand, Plaintiffs and putative class members bear the harsh effect of the Class-Action Waiver DRP by being deprived of the right to bring and participate in class actions that were pending and not disclosed to them. Such a result is surely "one-sided" and "overly harsh" and, accordingly, substantively unconscionable. *See Bilbrey v. Cingular Wireless, LLC*, 164 P.3d 131, 134 (Okla. 2007) (arbitration clause unconscionable where it was imposed on class members after class action complaint had been filed).

Accordingly, Nordstrom's Class-Action Waiver DRP should be held unconscionable, and unenforceable against Plaintiffs and putative class members.

---

[20] Nordstrom's Class-Action Waiver DRP cannot reach former Nordstrom employees who did not work for Nordstrom at the time the Class-Action Waiver DRP was introduced.

1

2

**IV.    CONCLUSION**

For the reasons set forth above, Nordstrom's arbitration agreement including the post-litigation insertion of the class action waiver provision is unenforceable.  Because the DRP expressly states that the class action waiver is not severable if it is found to be unenforceable, and that the class action must be tried in court rather than arbitration, this Court should deny Defendant's motion to compel in its entirety.

Dated:  January 12, 2012                 Respectfully Submitted,

**SCHWARZ, RIMBERG, BOYD & RADER, LLP**

By:      /s/  Kathryn Lee Boyd____
                Kathryn Lee Boyd, Esq.
                Darcy Harris, Esq.
                Jeff Neiderman, Esq.
                Sherli Shamtoub, Esq.
                *Attorney for Plaintiff*