# EXHIBIT 11

# ARBITRATION FAIRNESS ACT, 111TH CONGRESS: TEXTS OF THE HOUSE AND SENATE BILLS

**H.R. 1020- Page 1**
**S.931- Page 8**

I

111TH CONGRESS
1ST SESSION

# H. R. 1020

To amend chapter 1 of title 9 of United States Code with respect to arbitration.

---

IN THE HOUSE OF REPRESENTATIVES

FEBRUARY 12, 2009

Mr. JOHNSON of Georgia (for himself, Mr. MILLER of North Carolina, Ms. SCHAKOWSKY, Mr. BISHOP of Georgia, Ms. LEE of California, Mr. LOEBSACK, Mr. NADLER of New York, Mr. CHANDLER, Mr. PATRICK J. MURPHY of Pennsylvania, Mr. SCOTT of Virginia, Mr. PASTOR of Arizona, Mr. LATOURETTE, Mr. DOGGETT, Mr. CONYERS, Mr. DELAHUNT, Mr. STUPAK, Ms. WASSERMAN SCHULTZ, Ms. MCCOLLUM, Mr. COURTNEY, Ms. BALDWIN, Mr. DEFAZIO, Mrs. LOWEY, Mr. HIGGINS, Ms. EDDIE BERNICE JOHNSON of Texas, Mr. GUTIERREZ, Mr. BRALEY of Iowa, Mr. MARKEY of Massachusetts, Mrs. MALONEY, Mr. WATT, Mr. CARSON of Indiana, Mr. GEORGE MILLER of California, Ms. JACKSON-LEE of Texas, Mr. BOSWELL, Mr. SKELTON, Mr. BARROW, Mr. STARK, and Ms. LINDA T. SÁNCHEZ of California) introduced the following bill; which was referred to the Committee on the Judiciary

---

# A BILL

To amend chapter 1 of title 9 of United States Code with respect to arbitration.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Arbitration Fairness Act of 2009".

**Exhibit 11**

**SEC. 2. FINDINGS.**

The Congress finds the following:

(1) The Federal Arbitration Act (now enacted as chapter 1 of title 9 of the United States Code) was intended to apply to disputes between commercial entities of generally similar sophistication and bargaining power.

(2) A series of United States Supreme Court decisions have changed the meaning of the Act so that it now extends to disputes between parties of greatly disparate economic power, such as consumer disputes and employment disputes. As a result, a large and rapidly growing number of corporations are requiring millions of consumers and employees to give up their right to have disputes resolved by a judge or jury, and instead submit their claims to binding arbitration.

(3) Most consumers and employees have little or no meaningful option whether to submit their claims to arbitration. Few people realize, or understand the importance of the deliberately fine print that strips them of rights; and because entire industries are adopting these clauses, people increasingly have no choice but to accept them. They must often give up their rights as a condition of having a job, getting necessary medical care, buying a car, open-

ing a bank account, getting a credit card, and the like. Often times, they are not even aware that they have given up their rights.

(4) Private arbitration companies are sometimes under great pressure to devise systems that favor the corporate repeat players who decide whether those companies will receive their lucrative business.

(5) Mandatory arbitration undermines the development of public law for civil rights and consumer rights, because there is no meaningful judicial review of arbitrators' decisions. With the knowledge that their rulings will not be seriously examined by a court applying current law, arbitrators enjoy near complete freedom to ignore the law and even their own rules.

(6) Mandatory arbitration is a poor system for protecting civil rights and consumer rights because it is not transparent. While the American civil justice system features publicly accountable decision makers who generally issue written decisions that are widely available to the public, arbitration offers none of these features.

(7) Many corporations add to their arbitration clauses unfair provisions that deliberately tilt the

systems against individuals, including provisions that strip individuals of substantive statutory rights, ban class actions, and force people to arbitrate their claims hundreds of miles from their homes. While some courts have been protective of individuals, too many courts have upheld even egregiously unfair mandatory arbitration clauses in deference to a supposed Federal policy favoring arbitration over the constitutional rights of individuals.

**SEC. 3. DEFINITIONS.**

Section 1 of title 9, United States Code, is amended—

(1) by amending the heading to read as follows:

**"§ 1. Definitions"**;

(2) by inserting before "'Maritime'" the following:

"As used in this chapter—";

(3) by striking "'Maritime transactions'" and inserting the following:

"(1) 'maritime transactions';";

(4) by striking "commerce" and inserting the following:

"(2) 'commerce'";

Exhibit 11

(5) by striking ", but nothing" and all that follows through the period at the end, and inserting a semicolon; and

(6) by adding at the end the following:

"(3) 'employment dispute', as herein defined, means a dispute between an employer and employee arising out of the relationship of employer and employee as defined by the Fair Labor Standards Act;

"(4) 'consumer dispute', as herein defined, means a dispute between a person other than an organization who seeks or acquires real or personal property, services, money, or credit for personal, family, or household purposes and the seller or provider of such property, services, money, or credit;

"(5) 'franchise dispute', as herein defined, means a dispute between a franchisor and franchisee arising out of or relating to contract or agreement by which—

"(A) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor;

"(B) the operation of the franchisee's business pursuant to such plan or system is sub-

stantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

"(C) the franchisee is required to pay, directly or indirectly, a franchise fee; and

"(6) 'pre-dispute arbitration agreement', as herein defined, means any agreement to arbitrate disputes that had not yet arisen at the time of the making of the agreement.".

**SEC. 4. VALIDITY AND ENFORCEABILITY.**

Section 2 of title 9, United States Code, is amended—

(1) by amending the heading to read as follows: **"§ 2. Validity and enforceability"**,

(2) by inserting "(a)" before "A written";

(3) by striking ", save" and all that follows through "contract", and inserting "to the same extent as contracts generally, except as otherwise provided in the title"; and

(4) by adding at the end the following:

"(b) No predispute arbitration agreement shall be valid or enforceable if it requires arbitration of—

"(1) an employment, consumer, or franchise dispute; or

"(2) a dispute arising under any statute intended to protect civil rights.

"(c) An issue as to whether this chapter applies to an arbitration agreement shall be determined by Federal law. Except as otherwise provided in this chapter, the validity or enforceability of an agreement to arbitrate shall be determined by the court, rather than the arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement.

"(d) Nothing in this chapter shall apply to any arbitration provision in a collective bargaining agreement.".

**SEC. 5. EFFECTIVE DATE.**

This Act, and the amendments made by this Act, shall take effect on the date of the enactment of this Act and shall apply with respect to any dispute or claim that arises on or after such date.

○



II

111TH CONGRESS
1ST SESSION

# S. 931

To amend title 9 of the United States Code with respect to arbitration.

---

IN THE SENATE OF THE UNITED STATES

APRIL 29, 2009

Mr. FEINGOLD (for himself, Mr. DURBIN, Mr. KERRY, Mr. WHITEHOUSE, Mr. WYDEN, Mr. UDALL of New Mexico, Mr. MERKLEY, and Mr. KENNEDY) introduced the following bill; which was read twice and referred to the Committee on the Judiciary

---

# A BILL

To amend title 9 of the United States Code with respect to arbitration.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Arbitration Fairness Act of 2009".

**SEC. 2. FINDINGS.**

The Congress finds the following:

(1) The Federal Arbitration Act (now enacted as chapter 1 of title 9 of the United States Code) was intended to apply to disputes between commer-

Exhibit 11

cial entities of generally similar sophistication and bargaining power.

(2) A series of United States Supreme Court decisions have changed the meaning of the Act so that it now extends to disputes between parties of greatly disparate economic power, such as consumer disputes and employment disputes. As a result, a large and rapidly growing number of corporations are forcing millions of consumers and employees to give up their right to have disputes resolved by a judge or jury, and instead submit their claims to binding arbitration.

(3) Most consumers and employees have little or no meaningful option whether to submit their claims to arbitration. Few people realize or understand the importance of the deliberately fine print that strips them of rights, and because entire industries are adopting these clauses, people increasingly have no choice but to accept them. They must often give up their rights as a condition of having a job, getting necessary medical care, buying a car, opening a bank account, getting a credit card, and the like. Often times, they are not even aware that they have given up their rights.

Exhibit 11

(4) Private arbitration companies are sometimes under great pressure to devise systems that favor the corporate repeat players who decide whether those companies will receive their lucrative business.

(5) Mandatory arbitration undermines the development of public law for civil rights and consumer rights because there is no meaningful judicial review of arbitrators' decisions. With the knowledge that their rulings will not be seriously examined by a court applying current law, arbitrators enjoy near complete freedom to ignore the law and even their own rules.

(6) Mandatory arbitration is a poor system for protecting civil rights and consumer rights because it is not transparent. While the American civil justice system features publicly accountable decision makers who generally issue public, written decisions, arbitration often offers none of these features.

(7) Many corporations add to arbitration clauses unfair provisions that deliberately tilt the systems against individuals, including provisions that strip individuals of substantive statutory rights, ban class actions, and force people to arbitrate their claims hundreds of miles from their homes. While

some courts have been protective of individuals, too many courts have erroneously upheld even egregiously unfair mandatory arbitration clauses in deference to a supposed Federal policy favoring arbitration over the constitutional rights of individuals.

**SEC. 3. ARBITRATION OF EMPLOYMENT, CONSUMER, FRANCHISE, AND CIVIL RIGHTS DISPUTES.**

(a) IN GENERAL.—Title 9 of the United States Code is amended by adding at the end the following:

## "CHAPTER 4—ARBITRATION OF EMPLOYMENT, CONSUMER, FRANCHISE, AND CIVIL RIGHTS DISPUTES

"Sec.
"401. Definitions.
"402. Validity and enforceability.

**"§ 401. Definitions**

"In this chapter—

"(1) the term 'civil rights dispute' means a dispute—

"(A) arising under—

"(i) the Constitution of the United States or the constitution of a State; or

"(ii) a Federal or State statute that prohibits discrimination on the basis of race, sex, disability, religion, national origin, or any invidious basis in education, employment, credit, housing, public accom-

modations and facilities, voting, or program funded or conducted by the Federal Government or State government, including any statute enforced by the Civil Rights Division of the Department of Justice and any statute enumerated in section 62(e) of the Internal Revenue Code of 1986 (relating to unlawful discrimination); and

"(B) in which at least 1 party alleging a violation of the Constitution of the United States, a State constitution, or a statute prohibiting discrimination is an individual;

"(2) the term 'consumer dispute' means a dispute between a person other than an organization who seeks or acquires real or personal property, services (including services relating to securities and other investments), money, or credit for personal, family, or household purposes and the seller or provider of such property, services, money, or credit;

"(3) the term 'employment dispute' means a dispute between an employer and employee arising out of the relationship of employer and employee as defined in section 3 of the Fair Labor Standards Act of 1938 (29 U.S.C. 203);

"(4) the term 'franchise dispute' means a dispute between a franchisee with a principal place of business in the United States and a franchisor arising out of or relating to contract or agreement by which—

"(A) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor;

"(B) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

"(C) the franchisee is required to pay, directly or indirectly, a franchise fee; and

"(5) the term 'predispute arbitration agreement' means any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement.

**"§ 402. Validity and enforceability**

"(a) IN GENERAL.—Notwithstanding any other provision of this title, no predispute arbitration agreement

Exhibit 11

shall be valid or enforceable if it requires arbitration of an employment, consumer, franchise, or civil rights dispute.

"(b) APPLICABILITY.—

"(1) IN GENERAL.—An issue as to whether this chapter applies to an arbitration agreement shall be determined under Federal law. The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by the court, rather than the arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement.

"(2) COLLECTIVE BARGAINING AGREEMENTS.—Nothing in this chapter shall apply to any arbitration provision in a contract between an employer and a labor organization or between labor organizations, except that no such arbitration provision shall have the effect of waiving the right of an employee to seek judicial enforcement of a right arising under a provision of the Constitution of the United States, a State constitution, or a Federal or State statute, or public policy arising therefrom.".

(b) TECHNICAL AND CONFORMING AMENDMENTS.—

(1) IN GENERAL.—Title 9 of the United States Code is amended—

(A) in section 1, by striking "of seamen," and all that follows through "interstate commerce";

(B) in section 2, by inserting "or as otherwise provided in chapter 4" before the period at the end;

(C) in section 208—

(i) in the section heading, by striking "**Chapter 1; residual application**" and inserting "**Application**"; and

(ii) by adding at the end the following: "This chapter applies to the extent that this chapter is not in conflict with chapter 4."; and

(D) in section 307—

(i) in the section heading, by striking "**Chapter 1; residual application**" and inserting "**Application**"; and

(ii) by adding at the end the following: "This chapter applies to the extent that this chapter is not in conflict with chapter 4.".



**Exhibit 11**

(2) TABLE OF SECTIONS.—

(A) CHAPTER 2.—The table of sections for chapter 2 of title 9, United States Code, is amended by striking the item relating to section 208 and inserting the following:

"208. Application.".

(B) CHAPTER 3.—The table of sections for chapter 3 of title 9, United States Code, is amended by striking the item relating to section 307 and inserting the following:

"307. Application.".

(3) TABLE OF CHAPTERS.—The table of chapters for title 9, United States Code, is amended by adding at the end the following:

"4. Arbitration of employment, consumer, franchise, and civil rights disputes ........ 401".

**SEC. 4. EFFECTIVE DATE.**

This Act, and the amendments made by this Act, shall take effect on the date of enactment of this Act and shall apply with respect to any dispute or claim that arises on or after such date.

○

Exhibit 11