UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GINA BALASANYAN; NUNE
NALBANDIAN, on behalf of themselves all
others similarly situated,

                Plaintiffs,

      v.

NORDSTROM, INC., a Washington
Corporation; and DOES 1-100, inclusive,

             Defendants.

GINO MARAVENTANO; and NEESHA
KURJI,

             Plaintiffs,
      v.

NORDSTROM, INC., a Washington
Corporation; and DOES 1-100, inclusive,

             Defendants.

Case Nos. 11-cv-2609-JM-WMC
10-cv-2671-JM-WMC

**ORDER DENYING MOTION TO STAY
PENDING APPEAL**

## I.  BACKGROUND

       This is a consolidated class action suit in which current and former Nordstrom, Inc.

("Nordstrom") employees allege that the company violated wage and hour laws by requiring

salespersons to perform assignments that cannot lead to making sales, such as stocking, taking inventory, and marketing.

In March, an order from this court denied Nordstrom's motion to compel arbitration, reasoning that Defendant had engaged in improper class communications.  The same order consolidated these two cases, <u>Balasanyan v. Nordstrom</u>, 11cv2609, and <u>Maraventano v. Nordstrom</u>, 10cv2671.

Nordstrom now moves to stay the consolidated case pending the Ninth Circuit's review of this court's denial of the motion to compel arbitration.  Both the <u>Maraventano</u> Plaintiffs and the <u>Balasanyan</u> Plaintiffs oppose the motion.  For the reasons stated below, the motion is DENIED.

## II.  LEGAL STANDARD AND DISCUSSION

The parties for the most part agree on the standard for granting a stay pending appeal. The court will generally examine four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

<u>Golden Gate Restaurant Ass'n v. City and County of San Francisco</u>, 512 F.3d 1112, 1115 (9th Cir. 2008) (quoting <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987)).  Courts employ a "sliding scale" analysis for the first two factors such that a party can succeed by showing either (1) a probability of success on the merits and a mere possibility of irreparable injury or (2) simply that serious legal questions are raised, but that the balance of hardships tips sharply in its favor. <u>Golden Gate</u> at 1115-16.  <u>See</u> <u>also</u> <u>Leiva-Perez v. Holder</u>, 640 F.3d 962, 966 (9th Cir. 2011) (upholding sliding scale approach in alien's petition for stay of removal pending further hearing and noting Supreme Court's approval of flexible approach in cases requesting a stay pending petitions for writs of certiorari).

**A. Likelihood of Success on the Merits**

Perhaps the most significant dispute between Nordstrom and Plaintiffs concerns Nordstrom's chances of success on appeal.  Nordstrom's brief cites several reasons it believes it will succeed, which are discussed in turn below.[1]

1. Methods for Preclusion of Enforcement

The Federal Arbitration Act ("FAA") unmistakably calls for enforcement of arbitration agreements "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Nordstrom refers to this clause and Supreme Court precedent to argue that the court must enforce its arbitration agreement unless (1) Congress "has declared [the type of dispute] non-arbitrable," or (2) there is a traditional contract defense precluding enforcement. Def. Mtn. at 7.  Nordstrom argues that by relying on its power to control class communications under Fed. R. Civ. P. 23 to deny the motion to compel arbitration, the court violated precedent because it relied on neither of the two acceptable bases for invalidation of an arbitration agreement.

Nordstrom fails to sufficiently demonstrate that the FAA's phrase "such grounds as exist at law or in equity for the revocation of any contract" precludes the court from using a Federal Rule of Civil Procedure to invalidate an arbitration agreement on the same basis as would be used for any type of contract.  It first cites CompuCredit Corp. v. Greenwood, 132 S.Ct. 665, 669 (2012), which explains that courts must enforce arbitration agreements according to their terms "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." (internal quotation marks omitted).

---

[1]    Some of the arguments are minor and/or fail to significantly advance Nordstrom's argument that the motion to compel arbitration should have been granted.  For example, its first argument is that the FAA allows parties to agree to arbitrate existing disputes.  Neither Plaintiffs nor the court has contended that the FAA does not allow submission of an existing controversy to arbitration as a general matter.

Nordstrom also includes a section focusing on the fact that the court's order stated that the arbitration agreement attempted to induce putative class members into "forfeiting their rights."  Order at 7.  It provides no reason why the court's use of this phrase should lead to reversal.

Nordstrom provides no argument as to how or why this statement is meant to limit the universe of methods by which a court can invalidate an arbitration agreement.  It omits any discussion of the fact that the quotation from CompuCredit does not even make reference to traditional contract defenses, which clearly would also be an available method by which to invalidate an arbitration agreement even when federal statutory claims are at issue in the underlying case.  Further, the party opposing arbitration in CompuCredit specifically argued that the substantive statute at issue in the case, the Credit Repair Organizations Act, precluded arbitration; thus, the Court was responding to that argument in addressing the question of whether that law constituted a "contrary congressional command." [2]

Nordstrom's only other support for its proposition is AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1746 (2011).  However, that case focuses on the principle that courts may not invalidate arbitration agreements on grounds that apply to arbitration agreements in a different manner than typical contracts.  Indeed, the very page cited by Nordstrom emphasizes that the FAA's "saving clause" simply means that arbitration agreements cannot be invalidated "by defenses that apply only to arbitration." Concepcion at 1746.  The Court found the arbitration agreement valid in that case because the state's requirement of the availability of classwide arbitration "interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." Id. at 1748.  Nordstrom points to no part of the opinion purporting to limit courts' ability to invalidate arbitration agreements to the two situations mentioned above.  On the contrary, Concepcion reinforces the long-held maxim that arbitration agreements must be treated equally with other contracts.

---

[2]    In its reply brief, Nordstrom narrows the number of acceptable reasons for invalidation down to one, stating that "courts can only refuse to enforce an arbitration agreement based on a traditional contract defense." Def. Reply Br. at 8.  Despite this apparent change in viewpoint, the reply brief cites the same page of CompuCredit.

At the motion hearing, Nordstrom maintained that while the court may be able to invalidate a class action settlement or a release of claims through its Rule 23 power,[3] it does not have the same power with arbitration agreements because the FAA governs. However, as is recognized by Nordstrom and reiterated in Concepcion, the FAA merely purports to put arbitration agreements on the same level as other contracts. Strictly limiting the grounds by which arbitration agreements (but not typical contracts) can be invalidated would run directly contrary to the law.[4]

2. Use of Procedural Rule to Affect Substantive Right

Nordstrom also urges the court to accept its assertion that because the right to arbitrate is substantive, it cannot be abridged by Fed. R. Civ. P. 23, which is a procedural tool. Nordstrom explains that this must be true because the Rules Enabling Act states that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).[5] Once again, Nordstrom fails to meaningfully examine the parameters of its argument.

Nordstrom's characterization of the right to arbitrate as a "substantive right" comes from a Supreme Court case which stated that one provision of the FAA is the "primary substantive provision of the Act." Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1,

---

[3]     Nordstrom's only other option would have been to maintain that courts tending to class action proceedings can never invalidate a contract signed during the pendency of the litigation. That argument would have been no more successful than the argument it has made.
[4]     Even assuming Nordstrom could prove its argument that arbitration agreements have a preferred status, it has not attempted any discussion of its implicit contention that the Rules Enabling Act and Fed. R. Civ. P. 23 do not qualify as a type of the "congressional mandate" supposedly required by CompuCredit.
[5]     Nordstrom also cites Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2561 (2011), where the court reaffirmed that Rule 23 cannot abridge, enlarge, or modify a substantive right. However, the discussion in Dukes was in a much different context. The Court explained there that under the law, plaintiffs in the Dukes class could seek individual relief, and then Wal-Mart would "have the right to raise any individual affirmative defenses it may have." Id. at 2561. It rejected the Ninth Circuit's belief "that it was possible to replace such proceedings with Trial by Formula" where a sample of class members would be deposed, and the percentage of successful claims would then be applied to the class as a whole. The court invoked the Rules Enabling Act to explain that Rule 23 could not be used in order to prevent Wal-Mart from asserting its statutory defense to each claim.

24 (1983).  Yet various courts have relied on Rule 23 to invalidate arbitration provisions since Moses H. Cone was decided.  While it is true that these cases, such as In re Currency Conversion Fee Antitrust Litigation, 361 F.Supp.2d 237 (S.D.N.Y. 2005),[6] and Williams v. Securitas Security Services USA, Inc., 2011 U.S. Dist. LEXIS 75502 (E.D. Pa. 2011), are not from the Ninth Circuit, they provide persuasive authority concerning the issue raised by Nordstrom.

More importantly, Nordstrom's argument cannot succeed because it proves too much. Under Nordstrom's view that a procedural rule can never affect a substantive right, no federal procedural rule could be invoked to control litigants if that rule incidentally affected a substantive right, such as the right to contract.   Any contract signed during the pendency of class litigation would have to be enforced if the parties contracted to alter substantive rights, even if the communication directly violated a court's order concerning communications with the class. In addition, contrary to Nordstrom's assurances, the proposed limitation on procedural rules could not stop at Rule 23, it would necessarily extend to all procedural rules.[7]  For example, Rule 37 provides that a court may dismiss an action for violation of a discovery order; this procedural rule clearly affects a party's substantive rights, and thus, under Nordstrom's view, violates the Rules Enabling Act's mandate.[8]  When confronted with questions concerning the scope of its argument at hearing, Nordstrom assured the court that Rule 37 can stand, but that the FAA

---

[6]     In addition to the reasoning the court provides in this section, Currency Conversion provides a well-reasoned explanation for why the substantive-procedural argument cannot invalidate Rule 23.  361 F.Supp. 254-256 (finding that state law protected defendants' right to contract, but defendants' "musings on the Rules Enabling Act" failed because defendants were still free to amend their agreements "so long as [their] actions [did] not impair the integrity of this litigation").

[7]     See Currency Conversion, 361 F.Supp. at *256 ("Indeed, literal application of defendants' outcome-determinative test would lead to absurd results, since 'any rule, no matter how clearly "procedural," can affect the outcome of litigation.'") (quoting Hanna v. Plumer, 380 U.S. 460, 475 (1965) (Harlan, J., concurring)).

[8]     See Martin H. Redish & Dennis Murashko, THE RULES ENABLING ACT AND THE PROCEDURAL-SUBSTANTIVE TENSION:  A LESSON IN STATUTORY INTERPRETATION, 93 Minn. L. Rev. 26, 30 (2008) (explaining that the Court's current doctrine "permits rules to impact substantive rights if and only if they do so incidentally").

1    creates a different rule for arbitration agreements.  Once again, however, the FAA does not do

2    so—it ensures that contracts to arbitrate will be treated the same as other contracts.[9]

3    3. Arguments Concerning Nature of Communication

4         Nordstrom maintains that its "non-coercive" communication cannot constitute an

5    improper class communication.  It compares this case to Wang v. Chinese Daily News, Inc., 623

6    F.3d 743 (9th Cir. 2010) (vacated on other grounds) where there were instances of threats to

7    employees' jobs and other conduct more egregious than in the instant case.  There is some

8    contrast between this case and Wang, but the fact that the circumstances in Wang were worse

9    does not excuse Nordstrom's actions here.  As Plaintiffs point out, Wang did not purport to limit

10   its language to egregious situations, and discussed a Third Circuit case which stated that

11   "misleading" communications posed a significant threat to the fairness of litigation.  Wang, 623

12   F.3d at 755-56 (quoting In re School Asbestos Litigation, 842 F.2d 671, 680 (3d Cir. 1988)).

13   Other out-of-circuit cases such as In re Currency Conversion Fee Antitrust Litigation, 361

14   F.Supp.2d 237 (S.D.N.Y. 2005) have come to the same conclusion.[10]

15        Nordstrom also states that there was nothing inappropriate about distributing an updated

16   arbitration agreement, arguing that employers often create contracts by stating that continued

17
         [9]    Similarly, at the motion hearing Nordstrom's counsel agreed that a court could use its Rule 23
18   power to invalidate a settlement agreement, which affects substantive rights.  However, she once again
     stated that arbitration agreements should be treated differently because of the FAA.  That argument, of
19   course, derives from Nordstrom's claim that arbitration agreements can only be invalidated for two
     specific reasons, discussed in Section II.A.1., supra.  In relying on that argument, Nordstrom blurs its
20   separate theories together and avoids a straightforward explanation of why it believes procedural rules can
     affect substantive rights in other contexts, including when other types of contracts are signed, but not
21   when arbitration agreements are at issue.
         [10]   Nordstrom has vigorously and repeatedly tried to distinguish Currency Conversion because that
22   case also found that the contract at issue was unconscionable, going so far as to state at the motion
     hearing that the case "does not look to" the improper communication issue.  Nordstrom is simply
23   incorrect.  It is true that in a separate section of the opinion, that court found that the agreements at issue
     were unconscionable.  Id. at 252.  However, Nordstrom ignores the case's section concerning Rule 23 and
24   makes no attempt to demonstrate why the unconscionability finding was a necessary precursor to the Rule
     23 holding.  The Currency Conversion court did not so indicate.  Instead, it found generally that "when a
25   defendant contacts putative class members for the purpose of altering the status of a pending litigation,
     such communication is improper without judicial authorization."  Id. at 253.

1  employment implies acceptance.  It then reiterates that the court's decision cannot be based on

2  the fact that the contract was one for arbitration, since arbitration agreements must be given the

3  same treatment as other contracts under the FAA.  Finally, it contends that the notice of

4  acknowledgement was not improper because notices of acknowledgement are routine.  These

5  arguments are either redundant or fail to confront the totality of the factual circumstances at

6  issue, and therefore cannot succeed.

7  <u>4. Narrow Tailoring and Balancing of Rights</u>

8        Nordstrom maintains that under Supreme Court precedent, any order limiting

9  communication between parties must be narrowly tailored and balance the interests of the

10  parties.  Its brief argues that the court's order does not balance the parties' rights and does not

11  give sufficient weight to the arbitration agreement.  Further, Nordstrom states that the order

12  invalidates the agreement entirely rather than only invalidating it to the extent it would prevent a

13  class member from participating in the litigation.

14  *a. Narrowness*

15        First, Nordstrom does not indicate what part of the court's order "invalidates the

16  arbitration agreement in its entirety."   The order denies the motion to compel arbitration in this

17  case and explains that the court "invalidates the 'rolled out' 2011 agreement as to putative class

18  members . . . ."  Order at 8.[11]  The order's conclusion states that "[w]hile the court does not rule

19  on the viability of the agreement itself under other circumstances, the motion to compel

20  arbitration is DENIED because of the improper communication with the class."  Order at 8-9.

21  *b. Balancing of Interests*

22        Nordstrom also argues that under <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89 (1981), any court

23  using Rule 23 to limit communications between parties and putative class members must issue an

24

25  _____

   [11]      Nordstrom's reply asserts that this language "does not explicitly limit the invalidation of the
   August 2011 DRA only to putative class members."  Def. Reply at 10.  It declines to spell out why the
   language "invalidates [the agreement] as to putative class members" is not sufficiently explicit.

1    order demonstrating how it balanced the rights of the parties in making its decision.  Nordstrom

2    complains that the court order failed to give appropriate weight to the parties' rights to enter into

3    the arbitration agreement.

4           First, the gravity of this argument is lessened if the arbitration agreement is only

5    invalidated for purposes of this case, as discussed in the previous subsection.  Second, the <u>Gulf</u>

6    <u>Oil</u> discussion took place in a much different context.  The Court there did state that "an order

7    limiting communications between parties and potential class members should be based on a clear

8    record and specific findings that reflect a weighing of the need for a limitation and the potential

9    interference with the rights of the parties."  <u>Id</u>. at 101.  However, the facts of that case were

10   much different.  The case involved a class action based on racial and gender discrimination

11   brought by employees of Gulf Oil.  Before the case was filed, the EEOC had reached an

12   agreement with Gulf, and the company offered back pay to several hundred employees in

13   exchange for a release of liability.  After the litigation started, plaintiffs' counsel contacted some

14   of the employees in an effort to dissuade them from releasing their claims.  Gulf moved for an

15   order essentially banning any communication between plaintiffs' counsel and the class.  The

16   request was granted, but the court allowed Gulf to continue to contact employees with its offers

17   of conciliation and release.  The Court found that the district court's order was an abuse of

18   discretion because it failed to weigh the burden imposed on plaintiffs by preventing the

19   communications.  It explained that the possibility of abuse does not justify "routine adoption of a

20   communications ban."  <u>Id</u>. at 104.

21          This case can be distinguished from <u>Gulf Oil</u> in several ways.  First, as Plaintiffs point

22   out, this case involves invalidation of one agreement based on an improper past communication;

23   the court in <u>Gulf Oil</u> imposed an outright ban which was a prior restraint on communication,

24   clearly affecting the parties' ability to litigate.  The Supreme Court's opinion focused on the need

25   for an explanation in the context of such an intrusive order that would operate prospectively.

1  Second, the Court pointed out the complete lack of explanation from the district court in that

2  case.  Here, Nordstrom bases its argument on this court's lack of explicit weighing of the

3  burdens that would be created by invalidation of the order—deprivation of the right to arbitrate.

4  The need for explicit weighing is lessened or obviated because the court's order is not a

5  prospective ban on communication.  Further, the court's order did address Nordstrom's concern

6  about limits to communications with employees (Order at 7), which was the principal concern of

7  the Gulf Oil Court.

8  5. Conclusion

9       For the reasons stated above, none of Nordstrom's arguments are likely to persuade the

10  Ninth Circuit to reverse this court's order.   Though the likelihood of reversal is low, Nordstrom

11  does correctly point out that there is not a Ninth Circuit case directly bearing on this situation.

12  The lack of direct precedent prevents Nordstrom from completely failing on the "likelihood of

13  success" portion of the sliding scale test the court must employ.

14  **B. Irreparable Harm to Nordstrom**

15       Nordstrom maintains that it will be severely harmed if a stay is not entered and the Ninth

16  Circuit later reverses this court.  It points out that the entire advantage of the arbitration

17  agreement—to quicken the case and lower litigation expenses—will be lost if it must engage in

18  class action litigation (including massive nationwide discovery) until the Ninth Circuit decides

19  its appeal.

20       A majority of district courts in the Ninth Circuit have found irreparable harm exists in

21  situations somewhat analogous to this one.  In Stiener v. Apple Computer, Inc., 2008 U.S. Dist.

22  LEXIS 90335 at *17 (N.D. Cal. 2008), the court granted a stay to AT&T even though its appeal

23  was unlikely to succeed on the merits because AT&T would "suffer lost time and money [] were

24  the Ninth Circuit to reverse."  Further, "in addition to the standard costs and burden associated

25  with consumer litigation, [plaintiffs] would seek class certification, probably opposed by

[defendants], possibly leading to another interlocutory appeal, or alternatively, to expensive and burdensome notification and certification procedures." Id. The court also noted that "almost every California district court to recently consider whether to stay a matter, pending appeal of an order denying a motion to compel arbitration, has issued a stay." Id. However, several district courts have reached the opposite conclusion. In Bradberry v. T-Mobile USA, Inc., 2007 U.S. Dist. LEXIS 58801 at *11 (N.D. Cal. 2007), the court found that "[t]he cost of some pretrial litigation does not constitute an irreparable harm to Defendant," but that a stay might later be appropriate "when the trial date approaches or if discovery were burdensome." Id. See also Peck Ormsby Constr. Co. v. City of Rigby, 2012 U.S. Dist. LEXIS 36178 at *10-17 (D. Idaho 2012) (holding that harm was minimal because appeal only affected portion of case and parties had already spent significant time and money); Li v. A Perfect Franchise, Inc., 2011 U.S. Dist. LEXIS 60814 at *12-16 (N.D. Cal. 2011 ) (citing Bradberry and noting that many courts "have concluded that incurring litigation expenses does not amount to an irreparable harm").

As demonstrated by the case law, the court must examine the specific circumstances of the case to determine the gravity of the harm Nordstrom may face. The court finds that the potential harm is significant, but not so great as to outweigh Nordstrom's weak showing regarding its likelihood of success on appeal. Indeed, Nordstrom will face undesirable litigation costs that would prove unnecessary if the Ninth Circuit reverses this court's order; though those costs will create some harm, Nordstrom has made no showing of any special factors that establish an abnormal level of harm.

Though Nordstrom may be forced to engage in discovery that would be unnecessary if the court's arbitration order is reversed, the concern is lessened to some degree by the existence of the California PAGA claim, which cannot be arbitrated. Further, at least some of the claims from the Maraventano action will likely go forward as to those employees who ended their

1    employment before Nordstrom instituted the arbitration agreement at issue here.  Thus, some

2    discovery will be necessary when the <u>Maraventano</u> action moves forward.

3    **C. Injury to Plaintiffs and Public Interest**

4          Neither of the final two factors sways the court strongly in one direction, but

5    consideration of injury to the <u>Maraventano</u> Plaintiffs weighs against granting the stay.  As

6    Plaintiffs emphasize, it was Nordstrom that moved to consolidate the <u>Maraventano</u> case with the

7    <u>Balasanyan</u> action.  In its motion to consolidate, Nordstrom argued that "[t]he similar procedural

8    posture of the Maraventano and Balasanyan actions ensures that there will not be any prejudice

9    or undue delay caused by consolidation."  Mtn. to Consolidate at 1.  A grant of the stay would

10   indeed create delay to the <u>Maraventano</u> Plaintiffs who faced no motion to compel arbitration, as

11   well as the <u>Balasanyan</u> Plaintiffs who may have viable claims. The fact that the recovery sought

12   is fairly modest, as Plaintiffs have admitted, prevents this factor from weighing more heavily.

13         Plaintiffs' speculations about prejudice because of possible loss of evidence have little

14   force.  <u>Murphy v. DirecTV,</u>  2008 U.S. Dist. LEXIS 123185 at *10 (C.D. Cal. 2008).

15         Nordstrom points out that the FAA creates a public interest in favor of arbitration and

16   that there is a separate interest in preserving judicial resources.  Plaintiffs agree that there is a

17   policy in favor of arbitration, but maintain that "there is a competing and overriding public

18   interest in preventing the ongoing statutory violations and unfair business practices" Nordstrom

19   has perpetrated.  Pl. Opp. at 17.  It also notes that courts look to likelihood of success of the

20   appeal when assessing whether judicial resources will be saved, so that consideration should be

21   given little weight here.  <u>Bradberry</u> at *14-*15.  <u>Bradberry</u> also highlights the potential for

22   continuing harm if a case is stayed, which is contrary to the public interest.  <u>Id</u>. at *15-*16.

23   **III.  CONCLUSION**

24         Nordstrom's goal of staying this litigation due to the costs it may face while the issue is

25   on appeal is understandable, and the issue is a close one.  However, the motion cannot succeed

because Nordstrom has failed to present any persuasive argument as to why the appeal has a strong chance of success on the merits or even presents a serious legal question.  Though this could be remedied through an especially strong demonstration of irreparable harm or by showing that the balance of hardships tips sharply in its favor, Nordstrom has not met that high bar. Nordstrom will have the opportunity to make its case for a stay in front of the Ninth Circuit.

The motion is DENIED.

**IT IS SO ORDERED.**

DATED: May 30, 2012

**Jeffrey T. Miller**
**United States District Judge**