# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINA BALASANYAN; NUNE NALBANDIAN, on behalf of themselves all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORDSTROM, INC., a Washington corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case Nos. 3:11-cv-2609-JM (WMC)<br>3:10-cv-2671-JM (WMC)<br><br>**ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT ON BALANSANYAN'S FAIR LABOR STANDARDS ACT CLAIM AND DENYING THE MOTIONS FOR SUMMARY JUDGMENT ON ALL OTHER CLAIMS** |
| GINO MAREVENTANO; and NEESHA KURJI,<br>Plaintiffs,<br>v.<br><br>NORDSTROM, INC., a Washington corporation; and DOES 1-100, inclusive,<br><br>Defendants. | |

On October 8, 2012, Nordstrom, Inc. ("Nordstrom") filed two motions for summary judgment against two proposed class action law suits, Case No. 3:11-cv-2609 ("Balansanyan") and Case No. 3:10-cv-2671 ("Maraventano") (and together with the Balansanyan Plaintiffs, "Plaintiffs"). The Balasanyan complaint was originally filed in Los Angeles Superior Court on April 5, 2011, then removed to federal court, and later transferred to this district on November 9, 2011. The Maraventano complaint was originally filed in San Diego Superior Court, North

County, in October 2010 and was removed to this court in December 2010.  For the reasons stated below, the motion for summary judgment is GRANTED for Balansanyan's Fair Labor Standards Act claim,[1] but is DENIED for all other claims.

**I. BACKGROUND**

Nordstrom's salespeople work on commission rather than per hour.  Nordstrom calculates each salesperson's commissions at the end of each period and compares their commissions with the guaranteed minimum that they would have received had they been working at an hourly rate.  Maraventano Motion for Summary Judgment ("MMSJ") at 4; Balasanyan Motion for Summary Judgment ("BMSJ") at 3-6.  If a given employee's commissions per selling hour equaled or exceeded their guaranteed minimum, Nordstrom paid commissions.  MMSJ at 4-5; BMSJ at 4-5.  If their commissions did not equal or exceed the guaranteed minimum, Nordstrom paid the employee's commission plus the amount necessary to bring them to the guaranteed minimum draw rate[2] for all selling time.  MMSJ at 4-5; BMSJ at 4-5.  Selling time includes 30 minutes of daily stocking assignments as well as up to 40 minutes of pre-opening and post-closing time.[3]  MMSJ at 4-5; BMSJ at 4-5.  Nordstrom separately paid employees an hourly rate for all non-sell time, which consists of stock assignments in excess of 30 minutes and pre-opening and post-closing assignments in excess of 40 minutes.[4]  MMSJ at 6; BMSJ at 5-6.  According to Nordstrom, the average hourly salary

---

[1] Only the Balansanyan Plaintiffs asserted a Fair Labor Standards Act claim.

[2] The guaranteed minimum draw rate was $10.85 per hour.  MMSJ at 3; BMSJ at 3.

[3] Pre-opening and post-closing activities include writing thank you notes to customers, addressing invitations to customers regarding upcoming sales events, calling customers to thank them for their business, attending store rallies and certain meetings, walking sales floor to familiarize him or herself with merchandise, putting away shoes that customers did not purchase, putting shoes on display, matching mismatched shoes, taking tissue paper out of shoes, and cleaning and dusting tables on the sales floor.  Opp. to MMSJ at 7.

[4] Nordstrom, however, claims that its stores are open 10 minutes before posted hours and close 10 minutes after posted hours.

received ranged from $10.85 to $73.39 for Balasanyan, $10.85 to $43.17 for Nalbandian, $10.85 to $35.38 for Maraventano, and $11.31 to $17.02 for Kurji.  BMSJ at 9; MMSJ at 22.

The named Balasanyan Plaintiffs are both salespeople at Nordstrom stores in Los Angeles County. Balasanyan Second Amended Complaint ("BSAC") ¶¶ 5, 6.  Plaintiffs and members of the proposed Balansanyan class are paid on commission based on net sales.  The Balasanyan complaint alleges that Nordstrom has underpaid its salespeople across the country by only compensating them for time spent on stocking assignments, pre-opening, and post-closing periods through commissions earned, which they believe can only be used to compensate for commission producing activities.  Id. ¶¶ 13, 14.   The non-commission producing activities include performing marketing activities such as contacting customers to inform them of new product lines.  Id.  According to the BSAC, "[t]he combined time [Balansanyan] Plaintiffs and Class Members are required to engage in non-commission producing activities totals at least one (1) hour and thirty (30) minutes per work shift" for which there is no compensation.  Id. ¶ 16.   The BSAC states six causes of action: (1) Nonpayment of Wages under Cal. Labor Code § 1194; (2) Nonpayment of Wages under 29 U.S.C. § 206 (the Fair Labor Standards Act, or "FLSA"); (3) Breach of Contract; (4) Declaratory Relief under Cal. Civ. Code Proc. § 1060; (5) Unfair Business Practices under Cal Bus. & Prof. Code § 17200; and (6) a PAGA claim under Cal. Labor Code § 2699.

Unlike Balasanyan, the proposed Maraventano class only consists of California employees.  Plaintiff Maraventano was an employee of Nordstrom in San Diego County and Plaintiff Kurji was an employee in Orange County.   The Maraventano First Amended Complaint ("MFAC") alleges that Nordstrom did not pay employees for "stocking time . . . unless they failed to meet their minimum commission draw."  MFAC ¶ 21.  It states four causes of action: (1) Violation of Cal. Labor Code § 1197; (2) Violation of Cal. Labor Code §§ 201-203; (3) Willful violation of Cal. Labor Code § 226; (4) Unfair Business Practices

1  under Cal. Bus. & Prof. Code § 17200.  Unlike the Balansanyan Plaintiffs, the Maraventano

2  Plaintiffs did not assert a FLSA claim.

3  **II. LEGAL STANDARD**

4      A moving party is entitled to summary judgment where "there is no genuine issue as to

5  any material fact . . . ."  Fed. R. Civ. P. 56(c); <u>Prison Legal News v. Lehman</u>, 397 F.3d 692,

6  698 (9th Cir. 2005).  The court must examine the evidence in the light most favorable to the

7  non-moving party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).  While Rule 56

8  contains "no express or implied requirement . . . that the moving party support its motion with

9  affidavits or other similar materials negating the opponent's claim," <u>Celotex Corp. v. Catrett</u>,

10  477 U.S. 317, 323 (1986), "the moving party bears the burden of proof at trial, [and] it must

11  come forward with evidence which would entitle it to a directed verdict if the evidence were

12  uncontroverted at trial.'" <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992).

13      If the moving party meets its initial burden of production, the burden shifts to the

14  non-moving party to go beyond the pleadings by citing materials in the record to show a

15  genuine issue for trial.  <u>Celotex</u>, 477 U.S.at 324 (citation omitted).  The opposing party also

16  may not rely solely on conclusory allegations unsupported by factual data.  <u>Taylor v. List</u>, 880

17  F.2d 1040, 1045 (9th Cir. 1989).  Nevertheless, the ultimate burden of persuasion on the

18  motion remains with the moving party.  <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.</u>, 210

19  F.3d 1099, 1102 (9th Cir. 2000).  Doubt as to the existence of any issue of material fact

20  requires denial of the motion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

21  **III. DISCUSSION**

22      **A.  <u>Maraventano</u> and <u>Balansanyan</u> California Labor Code § 1197 Claims**

23      Nordstrom contends that its commission plan does not violate California Labor Code

24  §§ 1194 and 1197 because "California law permits employers to pay commissions for *all* hours

25  worked and does not impose any restrictions on the type of work employers can pay with

commissions." MMSJ at 7 (emphasis in original). Nordstrom alternatively asserts that commissions may be used to compensate employees for "non-sell time" work as it is part of the services provided in connection with sales. Nordstrom believes that its commission plan, which guaranteed that Plaintiffs received an effective minimum hourly draw rate that exceeded minimum wage for all selling time, therefore complied with federal and state minimum wage laws. MMSJ at 3; BMSJ at 3-4. Finally, Nordstrom contends that the employment contracts, which they insist comply with California's minimum wage laws, should govern. MMSJ at 13; BMSJ at 14.

To support its first argument, Nordstrom relies on the California Wage Order 7, also known as the Mercantile Wage Order, which was written by Industrial Welfare Commission ("IWC")[5] pursuant to California Labor Code § 1197. The Mercantile Wage Order requires every employer to pay "each employee . . . not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."[6] Mercantile Wage Order § 4(B). The Mercantile Wage Order contains no limitation on commissions only being used to compensate employees for "sales hours." MMSJ at 8-9. Nordstrom believes that the Mercantile Wage Order's silence on the type of work that commissions may be used to compensate necessarily means that it may use commissions to compensate for all work.

---

[5] According to the California Department of Industrial Relations website, the IWC's continuing duty is "to ascertain the wages paid to all employees in this state, to ascertain the hours and conditions of labor and employment in the various occupations, trades and industries in which employees are employed in this state, and to investigate the health, safety, and welfare of those employees. . . . The Division of Labor Standards Enforcement (DLSE) will continue to enforce the provisions of the wage orders." See California Department of Industrial Relations, IWC, http://www.dir.ca.gov/iwc/ and http://www.dir.ca.gov/iwc/aboutIwc.html (citing Cal. Lab. Code § 1173).

[6] The Mercantile Wage Order also defined the minimum wage to be $6.75 in 2006, $7.50 in 2007, and $8.00 in 2008. Mercantile Wage Order § 4(A).

Furthermore, the California Department of Labor recognizes "Draws Against Commission" plans, which compensate employees exclusively through commissions with a minimum guarantee or advance for all hours.  Cal. Dept. of Labor Standards Enforcement ("DLSE") Policies & Interpretation Manual ("DLSE Manual") § 34.2 (discussing requirements for Draw Against Commission plans); DLSE Opinion Letter 1987.3.3 ("The minimum wage may be used as a Draw Against Commission provided that the commission equals or exceeds the minimum wage for that period.").  While California state courts have considered challenges to Draw Against Commission plans, they have never questioned employers' right to compensate salespeople through such plans.  See e.g., Muldrow v. Surrex Solutions Corp., 208 Cal. App. 4th 1381 (2012) (finding that an employee's commissions were sufficiently related to the price of services to constitute commissions under a commissioned employees exemption); Ellis v. McKinnon Broad. Co., 18 Cal. App. 4th 1796 (1993) (analyzing a forfeiture provision in a Draw Against Commission plan); Agnew v. Cameron, 247 Cal. App. 2d 619 (1967) (analyzing a Draw Against Commission plan).  Nordstrom asserts that the California courts' silence on the validity of Draw Against Commission plans speaks volumes and contends that it may therefore compensate employees for their work exclusively with commissions.

As California and federal statutory law similarly do not distinguish between sales hours and other hours worked, Nordstrom also argues that this court should not recognize any distinction here.  For example, no distinction exists regarding what duties were performed when calculating overtime.  MMSJ 9-11; see e.g., DLSE Manual § 49.2.1.2 ("Compute the regular rate by dividing the total earnings for the week, including earnings during overtime hours, by the total hours worked during the week, including the overtime hours."); 29 C.F.R. § 778.118-120 ("When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek . . . and the total is divided by the total number of hours

worked in the workweek to obtain the employee's regular hourly rate for the particular workweek.").

Both Marventano's and Balansanyan's counsel counter that pay averaging is impermissible under California law, citing to <u>Armenta v. Osmose</u>, 135 Cal. App. 4th 314, 322-24 (2005), and other cases following <u>Armenta</u>.  <u>See, e.g.</u>, <u>Quezada v. Con-Way Freight, Inc.</u>, 2012 WL 2847609 at *2, *6 (N.D. Cal. 2012) (holding that defendant failed to compensate employees directly for "all hours worked" because employees were paid per mile driven along with an hourly rate for work at defendant's facilities, but not for vehicle inspections, paperwork completion, or the first hour of work); <u>Cardenas v. McClane Food Servs., Inc.</u>, 796 F. Supp. 2d 1246, 1249-53 (C.D. Cal. 2011) (concluding that <u>Armenta</u> required employer to pay truck drivers for pre and post-shift inspections as such time was not included in the hourly rate); and <u>Ontinveros v. Zamora</u>, 2009 WL 425962 (E.D. Cal. 2009) (applying <u>Armenta</u> when holding that paying mechanics based on the number of repairs completed failed to compensate them for time not performing repairs).  In <u>Armenta</u>, a defendant utility company compensated its employees only for "productive time" (i.e. time maintaining poles) and not for "nonproductive time" (i.e. traveling between locations, attending meetings, loading vehicles, completing paperwork, and maintaining vehicles). <u>Armenta</u>, 135 Cal. App. 4th at 317-18.  To determine whether employees had received at least the minimum wage for all hours, the defendant averaged the compensation earned for "productive time" over the total hours worked.  <u>Id.</u> at 319.  The <u>Armenta</u> court rejected this approach, citing California Wage Order No. 4, § 4(A), which provides that "[e]very employer shall pay to each employee wages not less than . . . [minimum wage] per hour for all hours worked." <u>Armenta</u>, 135 Cal. App. 4th at 323.  The <u>Armenta</u> court explained that this language "expresses the intent to ensure that employees be compensated at the minimum wage for each hour worked."  <u>Id.</u>  The <u>Armenta</u> court, citing the trial court, further justified its reasoning by

asserting that California's policy was to "liberally construe state wage and hour provision for the benefit of employee." <u>Id.</u> at 321.

Nordstrom counters that, "unlike <u>Armenta</u>, where the employer paid $0 per nonproductive hour, the commissions Nordstrom paid for employee's selling time here — including pre-opening and post-closing selling time — always exceeded the minimum wage." Reply to Opp. at 4.  What Nordstrom actually did was calculate the average rate that an employee earned per hour during selling time, which included up to 30 minutes of stocking assignments and 40 minutes of pre-opening and/or post-closing time, and compensated them either at the $10.85 rate or the actual average rate earned, whichever was higher.  That guarantee, compared to a retrospective argument that employees received above the minimum wage, distinguishes the matter at hand from the <u>Armenta</u> defendants.  But the crux of <u>Armenta</u> is that compensation must be directly tied to the activity being done, whether it is selling on commission or preparing to sell on commission.  <u>Armenta</u> instead suggests that Nordstrom's averaging method for commissioned employees is prohibited and that the Plaintiffs claims, if true, are valid.  <u>Armenta</u>, 135 Cal. App. 4th at 323.

Plaintiffs further contend that DLSE § 47.7 does distinguish between periods in which an employee can earn a commission and periods in which they cannot.  Opp. MSJ at 12.  Specifically, DLSE § 47.7 reads:

> DLSE has opined that employees must be paid at least the minimum wage for all hours they are employed.  Consequently, if, as a result of the directions of the employer, the compensation received by piece rate or commissioned workers is reduced because they are precluded, by such directions of the employer, from earning either commissions or piece rate compensation during a period of time, the employee must be paid at least the minimum wage (or contract hourly rate if one exists) for the period of time the employee's opportunity to earn commissions or piece rate.

1    Plaintiffs contend that Nordstrom's piecemeal approach to compensation violates this DLSE

2    provision because they are precluded from earning any commission during stocking

3    assignments as well as pre-opening and post-closing periods.

4          Nordstrom responds that DLSE § 47.7 "does not state that commission compensation

5    may be paid only for time spent interacting with customers and does not define sales work."

6    Balansanyan Reply to Opp. at 6.  Nordstrom further argues that DLSE § 47.7 relies on a

7    misinterpretation of the 2002.01.29 DLSE Opinion Letter, on which the <u>Armenta</u> court also

8    relied.  <u>Id.</u>  Rather, the DLSE Opinion Letter only requires employers to compensate hourly

9    employees for all hours worked as opposed to compensating employees for only some hours

10   worked provided that the average compensation per hour exceeds the minimum wage.

11         However, the deference this court owes to California state court interpretations of state

12   laws outweighs Nordstrom's argument that <u>Armenta</u> and DLSE § 47.7 incorrectly interpreted

13   the 2002.01.29 DLSE Opinion Letter.[7]  The <u>Armenta</u> line of cases is quite clear: employees

14   must be directly compensated at least minimum wage for all time spent on activities that do not

15   allow them to directly earn wages.  Although the <u>Armenta</u> line of cases did not involve Draw

16   Against Commission plans, Nordstrom's employees are not being compensated directly for

17   stocking, pre-opening, or post-closing time, during which they usually cannot earn a

18   commission.[8]

19

20   _____

21   [7] The court is concerned that no California statute suggests that commissioned employees must be paid separately
     for all work during which they cannot directly earn a commission.  That an hourly employee should be
22   compensated for the additional time reasonably stems from the statute because the employee ended up at that
     point purely for the benefit of the employer.  Paying commissioned employees additional wages for activities that
23   are related to sales when the employees benefit from such activities by increasing overall sales is a peculiar result.
     Indeed, the <u>Armenta</u> line of cases forces employers to craft hybrid compensation systems for commissioned or
     piece meal employees where they are also paying employees per hour for any activity that is not directly related to
24   earning a commission, even when that activity might assist in generating future profits.

25   [8]As Nordstrom noted during oral argument, Nordstrom's employees are occasionally able to ring up a sale during
     this time.  However, this court notes that making sales during stocking, pre-opening, or post-closing time appears
     to be the exception rather than the rule.

Nordstrom alternatively argues that courts have previously held that time spent in connection with sales, including facilitating future sales, constitutes selling time or sales work. See, e.g., Muldrow, 208 Cal. App., 4th at 1392 (noting that activities necessary to accomplishing a sale are properly characterized as sales); Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 801 (1999) (observing that work related to selling, such as traveling time to a sale, constitutes "selling"); and Cuvillier v. Alta Colleges, Inc., 2003 U.S. Dist. Lexis 26648 at 4*-5* (C.D. Cal. 2003) (defining sales broadly to include non-sales services to students that ensured students' continued enrollment and tuition payments). Nordstrom explains that its entire sales process is based on higher customer service standards, which requires its employees to perform these additional tasks as part of its efforts to improve sales. BMSJ at 17-19; MMSJ 17-19. Compensating employees via commission for those activities is therefore allegedly appropriate because those activities are related to the Plaintiffs' ability to generate profits.  But Plaintiffs correctly note that these cases do not concern pay averaging. Muldrow, 208 Cal. App., 4th at 1392 (addressing whether employer was not required to pay overtime wages to employees because they were subject to the "commissioned employees exemption" for overtime); Ramirez v. Yosemite Water Co., 20 Cal. 4th at 795 (discussing whether employees were involved principally in selling a product or service when determining whether the "commissioned employees exemption" applied); Cuvillier v. Alta Colleges, Inc., 2003 U.S. Dist. Lexis 26648 at 4*-5 (C.D. Cal. 2003) (determining whether the "outside salesperson exemption" applied).

Moreover, other courts have explicitly rejected Nordstrom's argument.  For example, in Ontinveros v. Zamora, 2009 WL 425962 (E.D. Cal. 2009), the court analyzed a payment scheme in which mechanics were compensated at varying rates per repair, but were not compensated for other essential tasks such as attending meetings and training sessions, setting up work stations, and taking state-mandated work breaks. Id. at *4.  The court held that an employer's failure to compensate employees for these essential tasks violated California labor

laws because "these tasks are essential to the [compensated work] and are uncompensated." Id. at *4-5.  Similarly, in Cardenas v. McClane Food Servs., Inc., 796 F. Supp. 2d 1246, 1249-53 (C.D. Cal. 2011), the court rejected the employer's argument that conducting vehicle safety checks before a shift and inspecting the vehicle and completing paperwork after the shift were "integral and necessary" to the employees' abilities to perform their job duties. Id. at 1250-52. Plaintiffs therefore request that this court adopt the reasoning in Ontinveros and Cardenas, which both conclude activities that are only indirectly related to sales or services must also be compensated.  The court agrees with Plaintiffs.  Based on Armenta's reasoning that related work must still be directly compensated, it necessarily fails.

Finally, Nordstrom argues that employees agreed to be paid on commission, it complied with the terms of the commission contracts, and that this court should look to the contracts to determine the rate of pay.  Nordstrom also notes that it paid Plaintiffs a guaranteed minimum draw rate of $10.85 per sell-time hour, even if Plaintiffs made no sales.  MMSJ at 3; BMSJ at 3. Plaintiffs acknowledge that they are not owed additional wages for shifts when no sales were made, but counter that neither employers nor employees may "contract away an employee's right to earn minimum wage for each hour worked."  See, e.g., Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740-41 (1981); Perry v. AT&T Mobility LLC, 2011 U.S. Dist. LEXIS 102334 at *14-15 (N.D. Cal. 2011).  Plaintiffs also note that the commission plan's legality should not be assumed merely because it was memorialized in a contract. See Hedgins v. Neiman Marcus Group, Inc., 34 Cal. App. 4th 1109 (1995) (holding that a commission contract violated the California labor code).  This court agrees that memorialization of the commission plan is irrelevant unless the commission plan is legal.  This argument is not viable because the commission plan is arguably not legal.

As Nordstrom has failed to proffer any convincing argument to defeat Plaintiffs' state minimum wage law claims, Plaintiffs' §§ 1194 and 1197 state minimum wage claims stand.

**B. Balansanyan Fair Labor Standards Act Claim**

FLSA requires every employer to pay the specified minimum wage to each of its employees "who in any work week is engaged in commerce . . . ." 29 U.S.C § 206(a). The Ninth Circuit has interpreted FLSA as rejecting "any minimum wage claim [employees] might have brought . . . [if] their salary, when averaged across their total time worked, still paid them above minimum wage." Adair v. City of Kirkland, 185 F.3d 1055, 1063 (9th Cir. 1999). Other circuits have similarly interpreted the FLSA. See e.g., Monahan v. Cnty. Of Chesterfield, 95 F.3d 1263, 1270-1272 (4th Cir. 1996) (citing state authority and the Department of Labor's opinions that employees who received at least an average hourly wage exceeding the minimum wage has no valid FLSA claims); Hensley v. MacMillain Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986) (finding that a truck driver who received more than the minimum wage for trips compensated by mileage driven could not assert a FLSA § 206(a) claim); and Dove v. Coupe, 759 F.2d 167, 171 (D.C. Cir. 1985) ("The workweek measuring rod has never been promulgated as an agency regulation; however, the Wage and Hour Division continues to adhere to it, and the courts have agreed that the workweek standard generally represents an entirely reasonable reading of the statute."); and U.S. v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d. Cir. 1960) (holding that employee did not have a valid FLSA § 206(a) because his average weekly salary exceeded the minimum wage). Several California state cases discussing California's minimum wage laws have recognized that weekly-averaging is permissible at the federal level. See, e.g., Armenta, 135 Cal. App. 4th at 322 (observing that "numerous federal courts had adopted this averaging formula in assessing minimum wage law violations, albeit under different statutes.").

Nordstrom also cites two cases from other districts, Perez v. Brands Mart Serv. Corp., 2011 U.S. Dist. Lexis 82708 at *13-17 (S.D. Fla. 2011), and Caci v. Wiz of Grove Lake, Inc., 267 F. Supp. 2d 297, 298-300 (E.D.N.Y. 2003), that rejected minimum wage claims where the

1  plaintiff knew that his or her compensation depended entirely on commission.  Like the present

2  case, the Caci and Perez plaintiffs were also responsible for several attendant duties and

3  received supplemented pay above "draw pay" when the plaintiff's commission failed to provide

4  an average at or above minimum wage for all hours worked, including time spent on the

5  attendant duties.  Perez, 2011 U.S. Dist. Lexis 82708 at *14-17; Caci, 267 F. Supp. 2d at 300.

6  Nordstrom asserts that Balasanyan and Nalbandian both received average hourly salaries that

7  exceeded the minimum wage, thereby negating any FLSA § 206(a) claim.  BMSJ at 9.

8       The Balansanyan Plaintiffs instead rely on Norceide v. Cambridge Health Alliance, 804

9  F. Supp. 2d 17 (D. Mass. 2011), a case in which the district court rejected the weekly averaging

10  method in favor of the hour-by-hour method.  Id. at 24.  The court began by noting that "while

11  [FLSA] does not explicitly state how to calculate when an employee has been paid for an hour's

12  worth of work, the statute's text is explicit that, with respect to the minimum wage, the only

13  metric Congress envisioned was the hour, with each hour having its own discrete importance."

14  Id. at 23.  Next, the court observed that "FLSA's legislative history does not explicitly address

15  whether an hour-by-hour or weekly-average method should be employed when determining

16  compliance with the minimum wage law."  Id. at 24.  After investigating the legislative record,

17  the court reasoned that Congress' primary concern was protecting workers, not employers.  Id.

18  The court concluded minimum wage provisions therefore should be read as an endorsement of

19  the hour-by-hour method because it is more protective of workers.  Id.

20       Norceide is unpersuasive because its analysis fails to consider that the hour-by-hour

21  method is less effective when analyzing varying forms of compensation, including

22  commissions.  No conclusive evidence indicates that Congress intended the hour-by-hour

23  method to be used instead of the weekly average method.  Indeed, Congress may have remained

24  silent for a variety of reasons, including an unwillingness to provide a one-size-fits-all analysis

25  method when multiple compensation plans are used.  In addition, the original case on point,

1   U.S. v. Klinghoffer Bros. Realty Corp., 285 F.2d at 490, cited a different legislative intent,

2   instead asserting that Congress' intent was "to guarantee a minimum livelihood to the

3   employees covered by the Act."  Perhaps most importantly, the Ninth Circuit's adoption of

4   Klinghoffer is binding on this court, negating the Balansanyan Plaintiffs' one case that stands

5   for the hour-by-hour proposition.  Accordingly, this court grants summary judgment as to

6   Balansanyan's FLSA claim.

7       **C.  Balansanyan Breach of Contract**

8           The Balansanyan Plaintiffs also allege that Nordstrom breached the commission contract

9   because they did not receive additional non-sell pay for stocking, pre-opening, or post-closing

10  assignments longer than 30 minutes.  They further allege that they paid for all meetings not

11  designed to facilitate sales.  Nordstrom counters that it paid the Balansanyan Plaintiffs an hourly

12  rate for all recorded non-sell time.  BMSJ at 24.  It insists that Balansanyan Plaintiffs' "failure

13  to record the time as non-sell breached their own duties and defeats their claim."  Id.  Finally,

14  Nordstrom asserts that the Balansanyan Plaintiffs cannot establish damages because they were

15  paid at least $10.85 for all hours worked.  Id.

16          The Balansanyan Plaintiffs counter that they were not paid for meetings or stocking

17  duties that exceeded 30 minutes, which their contracts defined as "non-sell" time.  The

18  Balansanyan Plaintiffs also allege that they needed manager or supervisor permission to submit

19  claims for "non-sell" compensation.  Nalbandian Decl. ¶¶ 7-15, 21; Balansanyan Decl. ¶¶ 8-13.

20  This requirement to obtain permission appears to have prevented employees from adequately

21  reporting their hours to Nordstrom.  If these factual allegations are true, then it is possible that

22  Nordstrom failed to honor the contract terms.  Accordingly, summary judgment is denied for

23  this claim.

24  / / /

25  / / /

14

1 **D.  Derivative Claims**

2          Defendants argue, and Plaintiffs concede, that these additional claims[9] necessarily rely

3 on Plaintiffs earlier minimum wage violation claims.  MMSJ at 23-25; BMSJ 24-25;

4 Balansanyan Reply to Opp. at 10; Balansanyan Opp. at 25.  As Plaintiffs' state minimum wage

5 law claims survive, these claims also survive.

6 **IV. CONCLUSION**

7          This court GRANTS Nordstrom's motion for summary judgment on Balansanyan's

8 FLSA claim, but DENIES Nordstrom's motions summary judgment on all other claims by both

9 Balansanyan and Maraventano.

10     **IT IS SO ORDERED.**

11 DATED: December 20, 2012

12

13                                                             **Jeffrey T. Miller**
                                                             **United States District Judge**

14

15

16

17

18

19

20

21

22

23 _____

24 [9] The Balansanyan Plaintiffs allege the following derivative actions: (1) Breach of Contract; (2) Declaratory Relief
under Cal. Civ. Code Proc. § 1060; (3) Unfair Business Practices under Cal Bus. & Prof. Code § 17200; and (4) a
PAGA claim under Cal. Labor Code § 2699.  The Maraventano Plaintiffs allege the following derivative actions:

25 (1) Violation of Cal. Labor Code §§ 201-203; (2) Willful violation of Cal. Labor Code § 226; (3) Unfair Business
Practices under Cal. Bus. & Prof. Code § 17200.