1  KATHRYN LEE BOYD, ESQ. (SBN 189496)
   lboyd@srbr-law.com
2
   DARCY R. HARRIS, ESQ. (SBN 200594)
3  dharris@srbr-law.com
   JEFF D. NEIDERMAN, ESQ. (SBN 203818)
4  jneiderman@srbr-law.com
   SHERLI SHAMTOUB, ESQ. (SBN 270022)
5  sshamtoub@srbr-law.com
   SCHWARCZ, RIMBERG, BOYD & RADER LLP
6  6310 San Vicente Boulevard, Suite 360
   Los Angeles, California 90048
7  Phone: (323) 302-9488
   Fax: (323) 931-4990
8
   *Attorneys for Plaintiffs Gina Balasanyan and Nune Nalbandian*
9

10

11                **UNITED STATES DISTRICT COURT**

12              **SOUTHERN DISTRICT OF CALIFORNIA**

13  Gina BALASANYAN, an            | **Master Case No. 10-cv-2671 JM (WMc)**
    individual, and Nune           | **Civil Case No. 11-cv-2609 JM (WMc)**
14  NALBANDIAN, an individual, on  |
    behalf of themselves and all others |
15  similarly situated,            | **PLAINTIFFS GINA BALASANYAN
                                   | AND NUNE NALBANDIAN'S NOTICE
16                                 | OF MOTION AND MOTION FOR
                    Plaintiffs,    | CLASS CERTIFICATION;
17                                 | MEMORANDUM OF POINTS AND
                                   | AUTHORITIES IN SUPPORT
18        vs.                      | THEREOF**

19  NORDSTROM, INC., a Washington
20  corporation; DOES 1-100, inclusive,
                                   | Date:    June 10, 2013
21                  Defendants.    | Time:    10:00 a.m.
                                   | Ctrm:    5D
22                                 | Judge:   Hon. Jeffrey T. Miller

23

24

25

26

27

28

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on June 10, 2013 at 10:00 a.m., or as soon thereafter as counsel may be heard by the Hon. Jeffery Miller in Courtroom 5D of the above-entitled court, located at 221 West Broadway, Suite 5190, San Diego, California 92101, Plaintiffs GINA BALASANYAN and NUNE BALBANDIAN on behalf of themselves and all others similarly situated (collectively "Plaintiffs") will and hereby move the Court for an order certifying this action to proceed as a class action under Federal Rules of Civil Procedure Rule 23(a) and (b)(3).

Plaintiffs will and hereby do move this Court for an Order:

1.      Certifying this case as a class action on behalf of the California Class of individuals which are defined as follows:

> All draw commission salespersons employed by Nordstrom within the state of California from October 20, 2006 through the date of trial ("California Class Period") who were or are paid on a draw commission basis.

2.      Certifying this case as a class action on behalf of the following California Sub-Classes of individuals which are defined as follows:

> All draw commission salespersons employed by Nordstrom within the state of California during the California Class Period who were or are paid on a draw commission basis for activities performed during store operating hours.

3.      Certifying this case as a class action on behalf of the following Nationwide Class of individuals which are defined as follows:

> All draw commission salespersons employed by Nordstrom nationwide from April 5, 2007 through the date of trial ("Nationwide Class Period") who were or are paid on a draw

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Notice of Motion and Motion for Class Certification     Master Case No. 10-cv-2671JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

commission basis (the "Nationwide Class Members").

4.    Alternatively, the class period for the Nationwide Class can be divided into and certified as sub-classes based on the seven applicable statute of limitations, as follows: (1) from April 5, 2010 to the present date (if within the state of Arizona); (2)  from April 5, 2008 to the present date (if within the state Alaska, Colorado, Delaware, Maryland, or North Carolina); (3) April 5, 2007 to the present date (if within the states of California, Pennsylvania or Texas); (4) from April 5, 2006 to the present date (if within the states of Florida, Kansas, Missouri, or Virginia); (5) from April 5, 2005 to the present date (if within the states of Connecticut, Georgia, Hawaii, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Tennessee, Utah or Washington); (6) from April 5, 2003 to the present date (if within the state of Ohio); and (7) from April 5, 2001 to the present date (if within the states of Illinois, Indiana or Rhode Island).

5.    Appointing Plaintiffs GINA BALASANYAN and NUNE NALBANDIAN as the representatives of the proposed California Class and Sub-Class and the Nationwide Class.

6.    Appointing Schwarcz, Rimberg, Boyd & Rader, LLP as counsel for the proposed Classes and Subclass.

7.    Requiring Nordstrom to produce to class counsel an electronic list of all California and Nationwide Classes and Sub-Class Members, including their name, address, telephone number, dates of employment as draw commission salespersons, location of employment, date of birth, and their Social Security number, within 15 days of the date of the Court's Order.

8.    Within 15 days after the class member list is produced, ordering Nordstrom to deliver to all current employees, with their paycheck and/or via internal delivery, notice of class certification pursuant to Rule 23 (in a form to be

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Notice of Motion and Motion for Class Certification    Master Case No. 10-cv-2671JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

approved by the Court and attached as Exhibit A, B, C and/or D to the Declaration of Kathryn Lee Boyd).

9.     Requiring Nordstrom to send to all former employees, *via* first class mail, notice of class certification pursuant to Rule 23 (in a form to be approved by the Court and attached as Exhibit A, B, C or D to the Declaration of Kathryn Lee Boyd).

10.     Nordstrom bear the cost of said Notice.

11.     Reserving to Plaintiffs and the class the right to send out further notice prior to a merits determination of the Rule 23 claims.

Plaintiffs will proceed upon this Notice of Motion, the included Memorandum of Points and Authorities, the accompanying declarations and evidence in submitted in support, the record in this matter, and on any other further briefing and arguments of counsel.

Dated:  March 6, 2013              Respectfully Submitted,

**SCHWARCZ, RIMBERG, BOYD & RADER, LLP**

By:     /s/ Kathryn Lee Boyd
                   Kathryn Lee Boyd, Esq.
                   *Attorney for individual and*
                   *representative Plaintiffs Gina*
                   *Balasanyan and Nune Nalbandian*

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Notice of Motion and Motion for Class Certification     Master Case No. 10-cv-2671JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ………………………………………………………..1

II.   PROPOSED CLASS DEFINITIONS ………………………………..4

    A.   **Claims Asserted On Behalf of the California Class and Sub-Class** ……………………………………………4

        i.   Violation of California Minimum Wage Law (Labor Code § 1194)…………………………………4

            1.   California Class: Before & After Posted Store Operating Hours ……………………………5

            2.   California Sub-Class: During Operating Hours …………5

                a.   Stock Assignments …………………………5

                b.   Meetings ………………………………6

                c.   Cold-calling and/or writing thank you notes ……..6

        ii.   Declaratory Relief (Civ. Code Proc. § 1060) …………………6

        iii.   Business & Professions Code Section 17200 et seq.   …………7

        iv.   Private Attorney General Act Penalties (Labor Code § 2699) …7

    B.   **Claim Asserted On Behalf of the Nationwide Class** ………………7

        i.   Breach of Contract ………………………………7

III.   THE PROPOSED CLASS MEETS ALL THE REQUIREMENTS OF CLASS CERTIFICATION …………………………………………8

    A.   **Class Certification Standard** …………………………………8

i

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

**TABLE OF CONTENTS, cont.**

**Page**

**B.**   **The Proposed California and Nationwide Classes Meet the Requirements of Rule 23(a)** …………………………………………9

　　i.   The Proposed Classes and Sub-Class Are Numerous …………9

　　ii.   Common Issues of Law and Fact Exist ………………………11

　　iii.   The Proposed Class Representatives' Claims are Typical of Those of the Proposed Classes They Seek To Represent …….13

　　iv.   The Class Representatives and Class Counsel are Adequate….15

**C.**   **The Proposed California and Nationwide Classes Meet the Requirements of Rule 23(b)** …………………………………………..16

　　i.   Common Questions of Law and Fact Predominate …………..16

　　　　1.   Predominance is Satisfied for the California Class ……17

　　　　2.   Predominance is Satisfied for the California Sub-Class..18

　　　　3.   Predominance is Satisfied for the Nationwide Class …..19

　　　　4.   Damages are Assessable Using Class-Wide Proof …….22

**IV.**   **CLASS ACTION IS A SUPERIOR METHOD OF ADJUDICATION**..23

**V.**   **PLAINTIFFS' PROPOSED NOTICE SHOULD BE APPROVED**……24

**IV.**   **CONCLUSION** ………………………………………………………25

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Alcantar v. Hobart Serv*.,
      2013 U.S. Dist. LEXIS 6752 (C.D. Cal. Jan. 15, 2013)   ………………….23

*American Airlines, Inc. v. Wolens*,
      513 U.S. 219 (1995) ………………………………………….……………24

*Armenta v. Osmose, Inc*.,
      135 Cal. App. 4th 314 (2005) ……………………………..……………1, 7

*Armstrong v. Davis*,
      275 F.3d 849 (9th Cir. 2001)   …………………………………..………11

*Blackie v. Barrack*,
      524 F.2d 891 (9th Cir. 1975)   ………………………………………17-18, 22

*Carter v. Anderson Merchandisers, LP*,
      2008 U.S. Dist. LEXIS 53852 (C.D. Cal. July 10, 2008) ………………24-25

*Church v. Consolidated Freightways, Inc*.,
      1992 U.S. Dist. LEXIS 18234 (N.D. Cal. Sept. 14, 1992) …………….……9

*Dilts v. Penske Logistics, LLC*,
      267 F.R.D. 625 (S.D. Cal. 2010)   …………………………………………..22

*Estrada v. FedEx*,
      154 Cal. App. 4th 1 (2007) ………………………………………..10, 11

*Fournigault v. Independence One Mortg. Corp*.,
      234 F.R.D. 641 (N.D. Ill. 2006)   …………………………………………1, 21

*Frank v. Gold'n Plump Poultry, Inc*.,
      2007 U.S. Dist. LEXIS 71179 (D. Minn. September 24, 2007) ………..…19

*Hanlon v. Chrysler Corp.*,
      150 F.3d 1011 (9th Cir. 1998)   ……………………….…………9, 11, 13, 16

iii

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

**TABLE OF AUTHORITIES (cont'd)**

**CASES**                                                                           **PAGE**

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ……………………………………..…..13

*Hunt v. Imperial Merchant Servs., Inc.*,
   560 F.3d 1137 (9th Cir. 2009) …………………………………………..25

*In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*,
   274 F.R.D. 286 (N.D. Cal. 2011) ……………………………….…….12

*In re Conseco Life Ins. Co. Life Trend Ins. Marketing and Sales Practice Litig.*,
   270 F.R.D. 521 (N.D. Cal. 2010) …………………………….……….20

*In re Med. Capital Secs. Litig.*,
   2011 U.S. Dist. LEXIS 126659 (C.D. Cal. July 26, 2011) ………...……9, 19

*In re Plastics Additives Antitrust Litig.*,
   2006 U.S. Dist. LEXIS 98277 (E.D. Pa. Dec. 20, 2006) …………………21

*In re Telectronics Pacing Systems, Inc.*,
   172 F.R.D. 271 (S.D. Ohio 1997) ………………………………………...20

*Kamar v. Radio Shack Corp.*,
   254 F.R.D. 387 (C.D. Cal. 2008) …………………………………13, 14, 16

*Kurihara v. Best Buy Co.*,
   336 F. Supp. 2d 1053 (N.D. Cal. 2004) ………………………………..18, 19

*Li v. A Perfect Day Franchise, Inc.*,
   2012 U.S. Dist. LEXIS 83677 (N.D. Cal. June 14, 2012) …………………22

*Molders' and Allied Workers Local Union No. 164 v. Nelson*,
   102 F.R.D. 457 (N.D. Cal. 1983) ………………………………..…….23

*Murray v. Local 2620*,
   192 F.R.D. 629 (N.D. Cal. 2000) …………………………………………7-8

*Ortega v. J.B. Hunt Transp., Inc.*,
   258 F.R.D. 361 (C.D. Cal. 2009) ………………………………..………19

iv

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

**TABLE OF AUTHORITIES (cont'd)**

**CASES**                                               **PAGE**

*Parkinson v. Hyundai Motor America*,
    258 F.R.D. 580 (C.D. Cal. 2008)   …………………………………………21

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797(1985)   ………………………………………..…………..21

*Richmond v. Dart Industries, Inc.*,
    29 Cal. 3d 462 (1981)  …………………………………………….……..8, 15

*Roberts v Heim*,
    *Roberts v Heim*, 670 F. Supp. 1466 (N.D. Cal. 1987)  …………..…………21

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009)  ………………………………………..……22

*Sav-On Drug Stores, Inc. v. Superior Court*,
    34 Cal. 4th 319 (2004)   ……………………………………………..………8

*Schramm v. JPMorgan Chase Bank, N.A.*,
    2011 U.S. Dist. LEXIS 122440 (C.D. Cal. Oct. 19, 2011)  ………..………21

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*,
    2002 U.S. Dist. LEXIS 10546 (C.D. Cal. 2002)   ……………………..………16

*Valentino v. Carter-Wallace*,
    97 F.3d 1227 (9th Cir. 1996)  ………………………………………….……..16

*Vedachalam v. Tata Consultancy Svcs., Ltd.*,
    2012 U.S. Dist. LEXIS 46429 (N.D. Cal. April 2, 2012) …………………..20

*Washington Mutual Bank, FA v. Superior Court of Orange County*,
    24 Cal.4th 906 (Cal. 2001)  ……………………………………………...…20-21

*Williams v. Sinclair*,
    529 F.2d 1383 (9th Cir. 1975)  …………………………………………..……21

*Wren v. RGIS Inventory Specialists*,
    256 F.R.D. 180 (N.D. Cal 2010)  …………………………………15, 16, 17, 19

v

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

# TABLE OF AUTHORITIES (cont'd)

**CASES**                                                       **PAGE**

*Zinser v. Accufix Research Institute,*
    253 F.3d 1180 (9th Cir. 2000)   ……………………………………………23

# STATUTES

Fed. R. Civ. P. 23(a) ……………………………………………………*passim*

Fed. R. Civ. P. 23(b)(3) ………………………………………..…………*passim*

Fed. R. Civ. P. 23(c)(4)-(5) …………………………………………………9

Cal. Bus. Prof. Code § 17200 ……………………………..……………7

Civ. Code Civ. Proc. §1021.5 …………………………………………………7

Cal. Code Civ. Proc. § 1060 …………………………………………………..6

8 Cal. Code Regs. § 11090(7) …………………………………..……………10

Cal. Labor Code § 201 …………………………………..………………7

Cal. Labor Code § 202 …………………………………..………………7

Cal. Labor Code § 203 …………………………………..………………7

Cal. Labor Code § 226 …………………………………………………10

Cal. Labor Code § 2699 …………………………………………………7

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

## I.   **INTRODUCTION**

On April 5, 2011, plaintiffs Gina Balasanyan and Nune Nalbandian (collectively "Plaintiffs"), current draw commission salespersons, initiated this putative class action against Nordstrom, Inc. seeking to certify a California class based on Nordstrom's violation of the California Labor Code and a nationwide class based on Nordstrom's breach of its employment contract terms.   Indeed, the Plaintiffs' claims are ripe for class disposition given Nordstrom's unlawful compensation policies and contract that apply to all commission salespersons.

On October 9, 2012, Nordstrom filed a Motion for Summary Judgment ("MSJ"). The record on MSJ establishes that the following common facts, which apply to all commission employees, were undisputed:

- Nordstrom compensates <u>all</u> draw commission salespersons in two ways: (1) commission ("selling time"), or (2) a set hourly rate ("non-sell time").[1]

- Draw commission salespersons earn a commission based on net-sales to customers; they cannot earn a commission from any activity other than directly selling merchandise to a customer. [2]

- Nordstrom's uniform policy and employee contract categorize the following as "selling time," compensable solely through commission earnings:

  - 40 minutes before and after the posted store opening and closing time ("Pre-Opening and Post-Closing Time"); [3]
  - 30 minutes of stocking assignments per shift (which includes department maintenance when commission salespersons are not available to service the customer ); [4]  and
  - Cold-calling and writing thank you cards. [5]

---

[1] Declaration of Sherli Shamtoub ("Sham. Decl.") Ex.1 , Dkt No. 72-17 Declaration of Camlynn Blumenthal (" Blum. Decl.") ¶ 2.  Nordstrom has a sophisticated time keeping system in place which permits Nordstrom to pay certain periods by an hourly rate either automatically or by physically inputting a code.  *Id*. at Ex. 1 ¶ 43.
[2] Sham. Decl. Ex.2 Deposition of Camlynn Blumenthal 9.27.2012 ("Blum. Depo 9.27") at 48:17-49:11; *Id*. at Exs. 4-5.
[3] Sham. Decl. Ex. 1 Blum. Decl.¶¶ 13, 25-27, 29-31; *Id*. at Ex. 8. Nordstrom asserts that its stores "generally" open ten minutes before the posted store operating hours. Sham. Decl. Ex. 1 ¶ 8.  However, Nordstrom has no policy requiring stores to open ten minutes before operating hours. Sham. Decl. Ex. 2 Blum. Depo 9.27 at 96:1-5.
[4] Sham. Dec. Ex. 1 Blum. Decl. ¶¶ 13, 18, 22-26, 30; *Id*. at Exs. 7-8.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

- Nordstrom's uniform policy and employee contract categorize the following time as "non-sell time" compensable by an hourly rate:
  - Stocking assignments in excess of 30 minutes per shift;[6] and
  - Meetings, including performance reviews and opportunity checks.[7]

On December 20, 2012, this Court denied Nordstrom's MSJ ("Order").  As to Plaintiffs' California claims, the Court held that California requires that "employees must be directly compensated at least minimum wage for all time spent on activities that do not allow them to directly earn wages."  Dkt No. 77 ("Order") at 9:13-15.  The Court further stated that "Nordstrom's employees are not being compensated directly for stocking, pre-opening or post-closing time." Order at 8:13-15.  In denying Nordstrom's MSJ on the breach of contract claim, this Court held that if Nordstrom required employees to obtain manager permission to submit claims for 'non-sell' time, "then it is possible that Nordstrom failed to honor the contract terms [requiring it to pay employees hourly for meetings and stock assignments over 30 minutes]" Order at 14:19-22.

On March 6, 2013, this Court denied Nordstrom's Motion for Reconsideration of the MSJ Order and Motion for Certification of MSJ Order for Interlocutory Appeal. Dkt No. 88 at 11:20-21.

Plaintiffs seek to certify a California class and sub-class, and a nationwide class based on the policies and employment contract Nordstrom concedes and this Court has found uniformly applies to all draw commission employees nationwide.

The California class and subclass seek to redress the injury Nordstrom has caused draw commission employees in California based on its unlawful compensation scheme.  In particular, the California class is limited to Nordstrom's failure to directly compensate draw commission employees for the Pre-Opening and Post-Closing Times.[8]  The California Sub-Class is likewise based on

---

[5] Sham. Decl. Ex. 1 Blum. Decl. ¶¶ 13, 30; *Id*. at Exs. 9-16.
[6] Sham. Decl. Ex. 1 Blum. Decl. ¶¶ 13, 18, 22-26, 30; *Id*. at Exs. 7-16.
[7] Sham. Dec. Ex. 1 Blum. Decl. ¶¶ 13, 30; *Id*. at Exs. 7-17.
[8] The California class is identical to the class proposed in the consolidated action,

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Nordstrom's express uniform policy which fails to directly compensate commission employees for required activities performed during store operating hours.  These activities are limited to (1) stock assignments, (2) meetings and (3) cold-calling/ writing thank you notes.  By Nordstrom's own definition these tasks necessarily require commission employees not to be available to assist customers, and thereby Nordstrom precludes them from earning a commission.

The Nationwide class asserted by the Balasanyan Plaintiffs seeks to hold Nordstrom accountable to all draw commission employees for its failure to follow its own uniform employment contract which requires the payment of hourly wages for (1) stock assignments in excess of 30 minutes per shift, and (2) meetings.

Plaintiffs' proposed classes and sub-class easily meet the requirement of Rule 23 as they are based on undisputed policies and contracts applicable to all putative class and subclass members.  In addition to class treatment for California based employees, there is no manageability impediment to a nationwide class action for commission employees subjected to the identical policies.  Indeed, since the relevant law differs little from state to state, there is no bar to the application of California law to the Nationwide Class.  Furthermore, any variations regarding the assignment of tasks and length of completion of tasks (due to either alleged managerial discretion or individual employees' circumstances) are simply issues of damages, which are readily calculable through, among other things, Nordstrom's employee records and trusted survey methodology.

In sum, since the central question of whether Nordstrom's uniform averaging method is illegal in California, and whether Nordstrom has breached its employment agreement nationwide is not only common to all class members, but in essence has already been decided, Plaintiffs' proposed classes and sub-class are exceptionally suited for class treatment.  *See* Order at 8:13-14 ("Nordstrom's averaging method for commissioned employees is prohibited and [] the Plaintiffs

*Maraventano v. Nordstrom.*

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1  claims, if true, are valid."); Order at 14:19-22.

2  **II.   PROPOSED CLASS DEFINITIONS**

3       **California Class**: All draw commission salespersons employed by

4  Nordstrom within the state of California from October 20, 2006 through the date of

5  trial ("California Class Period") who were or are paid on a draw commission basis

6  (the "California Class Members").[9]  Dkt No. 66 ("SAC") at ¶¶28-29.

7       **California Sub-Class**:  All draw commission salespersons employed by

8  Nordstrom within the state of California during the California Class Period who

9  were or are paid on a draw commission basis for activities performed during store

10  operating hours ("California Sub-Class Members").

11       **Nationwide Class**: All draw commission salespersons employed by

12  Nordstrom nationwide from April 5, 2007 through the date of trial ("Nationwide

13  Class Period") who were or are paid on a draw commission basis (the "Nationwide

14  Class Members").[10]

15       **A.   Claims Asserted On Behalf Of The California Class And Sub-Class**

16            ***i.   Violation Of California Minimum Wage Law (Labor Code § 1194)***

17       Pursuant to *Armenta v. Osmose, Inc*. 135 Cal. App. 4th 314 (2005) and its

18  progeny, Plaintiffs assert that California Class and Sub-Class Members "must be

19  directly compensated at least minimum wage for all time spent on activities that do

20  not allow them to directly earn wages."   Order at 9:13-15; SAC at ¶¶ 36-42.

21       The Court held that Nordstrom's uniform policy established that it engaged

22  in pay averaging by including in its definition of "selling-time" "up to 30 minutes

23  of stocking assignments and 40 minutes of pre-opening and/or post-closing time."

24  _____
   [9] The proposed California Class definition is identical to that of the Maraventano
25  class definition.  Therefore, the Balasanyan California Class Members would
   necessarily be members of the Maraventano class. For the purpose of judicial
26  efficiency these two classes should be treated the same.
   [10] Alternatively, the class period for the Nationwide Class can be divided into sub-
27  classes based on the applicable statute of limitations.  *See* Sham. Decl. Ex. 22; *see
   also Fournigault v. Independence One Mortg. Corp*., 234 F.R.D. 641, 645 (N.D. Ill.
28  2006) (certifying seven subclasses based in part on differences in state statutes of
   limitation in nationwide written breach of contract case).

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Order at 8:6-8. Accordingly, this Court held that "Nordstrom's averaging method for commissioned employees is prohibited. . . ." Order at 8:13-15.

### 1. California Class: Before & After Posted Store Operating Hours

Plaintiffs' California Class seeks to recover unpaid wages to California Class Members who were compensated solely through their commission earnings for Pre-Opening and Post-Closing Times. It is undisputed that Nordstrom uniformly paid all commission salespersons solely commission earnings for Pre-Opening and Post-Closing Times.[11] As this Court found in its Order, Nordstrom's policy and practice of failing to directly pay California Class Members for Pre-Opening and Post-Closing Times violates the California Labor Code. Order at 8:13-15. Thus, the California Class is aptly suited for class treatment.

### 2. California Sub-Class: During Operating Hours

Plaintiffs' California Sub-Class seeks to recover unpaid wages based on three activities performed during store operating hours, for which they are not directly compensated: (a) stock assignments; (b) meetings; and (c) cold-calling and/or writing thank you notes. Throughout the California Sub-Class period Nordstrom's uniform policy stated that cold-calling and/or writing thank you notes, and up to 30 minutes of stock assignments were selling time paid though commission solely.[12] In addition, Nordstrom fails to compensate Sub-Class Members at an hourly rate for their attendance at required meetings.[13]

### a. Stock Assignments

Nordstrom defines stocking assignments "as time spent in the back room, typically for an extended period of time where the salesperson is unavailable to service the customer."[14] Stock assignments also include department maintenance

---

[11] Sham. Decl. Ex. 1 Blum. Decl. at ¶¶ 2, 8.
[12] Sham. Decl. Ex. 1 Blum. Decl. at ¶ 18, 22-28; *Id*. at Exs. 9-16.
[13] Declaration of Gina Balasanyan ("Bal. Decl.") at ¶¶ 15-17; Declaration of Nune Nalbandian ("Nal. Decl.") at ¶¶ 12-13. Pursuant to its own policy, Nordstrom must pay Plaintiffs an hourly wage for all meetings attended. Sham. Decl. Exs. 7-17.
[14] Sham. Decl. Ex. 2 Blum. Depo 9.27 at 53:4-23.

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048
Plaintiffs' Notice of Motion and Motion for Class Certification    Master Case No. 10-cv-2671 JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

when commission salespersons are not available to service the customer: "Normal department maintenance (*when still available to service the customer*) does not count toward the 30 minutes."[15]  It is undisputed that during stock assignments Plaintiffs are unable to assist customers and therefore cannot earn a commission.[16]

### b.  Meetings

Pursuant to its own policy and contract, Nordstrom must pay commission salespersons an hourly wage for all meetings attended.[17]  However, Nordstrom does not.  California Sub-Class Members are compensated through their commission earnings for time spent at: (1) annual performance reviews; (2) periodic performance reviews; (3) store/ department meetings; and (4) opportunity checks.[18]  However, Sub-Class Members cannot earn a commission during meetings.[19]  These meetings are held off the sales floor, in a back room, human resources or in supervisors' offices, and attended by Nordstrom employees only.[20]

### c.  Cold-calling and/or writing thank you notes

Draw commission salespersons are required to engage in certain general marketing activities on behalf of Nordstrom without being directly compensated.[21]  Commission salespersons are required to write thank you notes to customers after the completion of a sale.[22] In addition, they are required to cold-call people, many of which they have never sold merchandise to, in order to inform them of events and promotions.[23]

### ii.   *Declaratory Relief (Civ. Code Proc. § 1060)*

Nordstrom's policy and practice as applied to the California Class and Sub-

---

[15] Sham. Decl. Exs. 7-8 (emphasis added).
[16] Sham. Decl. Ex. 2 Blum. Depo 9.27 at 53:4:23; *Id*. at Ex. 7-8; Bal. Decl. ¶¶ 12, 21; Nal. Decl. ¶¶ 11, 17.
[17] Sham. Decl. Exs. 9-17; *Id*. at Ex. 3 Deposition of Camlynn Blumenthal 9.28.2012 ("Blum. Depo 9.28") at 112:15-113:13.
[18] Bal. Decl. ¶¶ 15-18; Nal. Decl. ¶¶ 12-13.
[19] Bal. Decl. ¶¶ 15-18; Nal. Decl. ¶¶ 13-14.
[20] Bal. Decl. ¶¶ 15-18; Nal. Decl. ¶¶ 13-14; Sham. Decl. Ex. 17.
[21] Sham. Decl. Exs. 8-17.
[22] Bal. Decl. ¶ 20; Nal. Decl. ¶ 16.
[23] Bal. Decl. ¶ 19; Nal. Decl. ¶¶ 14-15.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Class Members, set forth above, violate California public policy.  SAC at ¶¶ 62-63.
California has a "strong public policy in favor of full payment of wages for all
hours worked."  *Armenta*, 135 Cal. App. 4th at 324.  As Nordstrom contests that its
uniform policy and practice of wage averaging violates California public policy, an
actual controversy exists, and Plaintiffs are entitled to declaratory relief.

### iii.    Business & Professions Code Section 17200 et seq.

Nordstrom's violation of the Labor Code constituted a violation of Bus. &
Prof. Code §17200 *et seq*.  Accordingly, pursuant to Bus. & Prof. Code §17203,
Plaintiffs seek disgorgement and restitution of all sums wrongfully obtained,
injunctive relief to prevent these unlawful and unfair practices, and attorney's fees
pursuant to Civ. Proc. Code §1021.5.  SAC at ¶¶ 68-70.

### iv.    Private Attorney General Act Penalties (Labor Code § 2699)

Plaintiffs seeks civil penalties, attorneys' fees and costs pursuant to the
Private Attorneys General Act of 2006 ("PAGA") for violations of Labor Code
section 201, 202, 203[24] and 1194. SAC at ¶¶ 72-73, 76.  The Labor Code violations
alleged by Plaintiffs are proper predicates on which to base their PAGA claims. *See
Pelton v. Panda Rest. Group, Inc*., 2011 U.S. Dist. LEXIS 52486, *17 (C.D. 2011).
Thus, while PAGA claims could be litigated on a representative basis without
certification, the PAGA claims asserted in this case are derivative of the Labor
Code claims discussed above, and should be certified for the same reasons.

### B. Claim Asserted On Behalf Of The Nationwide Class

### i.    Breach of Contract

The Commission Calculation Agreement is used nationwide by Nordstrom as
a binding agreement.[25]   Furthermore, the policies set forth in Nordstrom's

---

[24] If necessary, the Balasanyan and Maraventano Plaintiffs request that either or
both of the Maraventano Plaintiffs – Gino Maraventano and/or Neesah Kurji – be
appointed as class representatives for the purpose of violations of Labor Code
sections 201, 202 and 203.
[25] Sham. Decl. Ex. 3 Blum Depo 2.28 at 136:4-136:16 ("what is included in this
Commission Calculation Agreement, a lot of it relates to the calculation of
commissions, and that essentially is the same for all draw salespeople across the

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

employee handbook and new hire materials are "the terms and conditions" of draw commission salesperson's employment by Nordstrom nationwide.[26]

The terms and conditions of Nordstrom's commission policy, as stated in the Commission Calculation Agreement, employee handbook and new hire materials, provide that commission salespersons will be paid on an hourly basis for all time spent: (1) in excess of 30 minutes per shift on stock assignments, inclusive of any time before and after the store operating hours, and (2) at meetings.[27]  The same definitions of stock assignments and meetings, as discussed in Section A(i)(2)(a) *supra*, apply in the Nationwide Class.  In addition, whereas the California Sub-Class is limited to stock assignments performed during store operating hours, the Nationwide Class includes stock assignments performed before and after the store operating times.[28]  Nordstrom has breached its contact with the Nationwide Class Members by failing to pay an hourly wage for stock assignments in excess of 30 minutes and meetings, including annual reviews.  Accordingly, Plaintiffs seek compensation for Nordstrom's breach of its employment contract.

## III.  THE PROPOSED CLASS MEETS ALL THE REQUIREMENTS OF CLASS CERTIFICATION

### A. Class Certification Standard

California's public policy favors the use of class actions to resolve claims asserting wage and hour violations.  *See Richmond v. Dart Industries, Inc*., 29 Cal. 3d 462, 473 (1981) ("this state has a public policy which encourages the use of the class action"); *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 ( 2004).

To qualify for class certification a plaintiff need not make a prima facie showing that he or she will prevail on the merits.  *Murray v. Local 2620*, 192

---

nation"); *Id.* at 137:5-20 (Q: "Nordstrom views [the Commission Calculation Agreement] as agreements that it has with its draw commissioned sales employees? … A: Yes. Generally, we've defined as an agreement, and it's our way of communicating to our employees about how their pay is calculated, generally.").
[26] Sham. Decl. Ex. 3 Blum. Depo 2.28 at 107:11-24; 139: 5-6.
[27] Sham. Decl. Ex. 3 Blum. Depo 2.28 at 129:23-131-9; *Id.* at Exs. 4-6, 8-17.
[28] Sham. Decl. Exs. 7-8; *Id*. at Ex. 3 Blum. Depo 2.28 at 97:7-21.

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

F.R.D. 629, 631 (N.D. Cal. 2000). "When probing beyond the pleadings, the focus of the court's inquiry goes to the common questions of law or fact, not the proof of answers to those questions or the likelihood of success on the merits and not to merits issues that do not overlap with the Rule 23 requirements." *In re Med. Capital Secs. Litig.*, 2011 U.S. Dist. LEXIS 126659, *15-16 (C.D. Cal. July 26, 2011); *Church v. Consolidated Freightways, Inc*., 1992 U.S. Dist. LEXIS 18234, *6-7 (N.D. Cal. Sept. 14, 1992) ("A district court should rule only on those issues which need to be resolved to reach a determination regarding class certification.").

Here, the Court has already "prob[ed] beyond the pleadings" in denying Nordstrom's MSJ. Furthermore, this case is directly in line with California's express public policy as class certification provides the only realistic method for commission salespersons in California and nationwide to have their claims adjudicated. It will eliminate the possibility of repetitious small claims and will enable the many small claimants to band together to efficiently challenge Nordstrom's payment practices in one action. Consequently, this case is highly suited for class action treatment.

As addressed below, the prerequisites of Rule 23(a) and (b)(3) are satisfied. In the event this Court finds that the entire action is not appropriate for certification, Plaintiffs request that this Court consider certifying certain sub-classes or causes of action pursuant to authority granted to the Court under Rule 23(c)(4)-(5).

**B. THE PROPOSED CALIFORNIA AND NATIONWIDE CLASSES MEET THE REQUIREMENTS OF RULE 23(a)**

Rule 23(a) applies the following four prongs: (1) numerosity; (2) whether there are common questions of law or fact; (3) typicality; and (4) adequacy. *See* Fed. R. Civ. P. 23(a); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

### *i.    The Proposed Classes and Sub-Class Are Numerous*

Numerosity is met if "the class is so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A showing of numerosity is generally

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1   satisfied where more than 100 putative class members exist.  *See Molders' and*

2   *Allied Workers Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal.

3   1983). Here, the putative California and Nationwide Class and Sub-Class Members

4   range in the tens of thousands.

5        The California Class – which is limited to the opening and closing shifts –

6   consists of at least 20,000 putative Class Members.[29]  The California Sub-Class,

7   which applies to work performed during store operating hours, is also at least

8   20,000 putative class members since all mid-shift employees work during operating

9   hours and all employees who worked closing and opening shifts also necessarily

10  worked during store operating hours. [30]  Nationwide, Nordstrom employs

11  approximately 60,000 employees, including draw commission employees.[31]  Draw

12  commission salespersons are employed in all of Nordstrom's full-line store

13  locations nationwide, the majority of which are located in California.[32]

14  Accordingly, individual joinder is impracticable.

15       In addition, ascertainability of the California and Nationwide Classes and

16  Sub-Class Members poses no obstacle here.[33]  *See Estrada v. FedEx,* 154 Cal. App.

17  4th 1, 14-15 (2007) ("[t]he class is ascertainable if it identifies a group of unnamed

18  plaintiffs by describing a set of common characteristics sufficient to allow a

19  member of that group to identify himself as having a right to recover based on the

20  description.").  California has long required employers to maintain the detailed

21  information necessary to identify current and former employees. Labor Code § 226;

22  8 Cal. Code Regs. § 11090(7).  Indeed, all draw commission employees nationwide

23  are categorized, and thereby identifiable, by specific position titles in Nordstrom's

---

[29] Sham. Decl. Ex. 3 Blum. Depo 9.28 at 45:21-49:10; *Id*. at Ex. 18 at 4:22-7:3.
[30] Sham. Decl. Ex. 3 Blum. Depo 9.28 at 56:14-57:6. Nordstrom assigns its draw commission employees one of three shifts: opening, closing and mid-shift. *Id*. at Ex. 3 Blum. Depo 9.28 at 57:3-6.
[31] Sham. Decl. Ex. 3 Blum. Depo 9.28 at 50:4-20.
[32] Sham. Decl. Ex. 3 Blum. Depo 9.28 at 32:1-7, 19-21; *Id*. at Ex. 20.
[33] Rule 23 does not contain an ascertainability requirement similar to California Code of Civil Procedure Section 382. However, even if it did, the California and Nationwide Classes and Sub-Class would readily be deemed ascertainable.

- 10 -

Plaintiffs' Notice of Motion and Motion for Class Certification    Master Case No. 10-cv-2671 JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1   internal system (Oracle HRMS).[34]   As such, all of the California and Nationwide

2   Classes and Sub-Class Members are readily ascertainable from Nordstrom's own

3   records. *See Estrada,* 154 Cal. App. 4th 1 (rejecting defendants assertion that

4   "every member of the class has to be identified from the outset").

5               *ii.    Common Issues of Law and Fact Exist*

6           The Ninth Circuit construes commonality permissively. *See Hanlon*, 150

7   F.3d at 1019. "All questions of fact and law need not be common to satisfy the

8   rule." *Id.*   "The existence of shared legal issues with divergent factual predicates is

9   sufficient, as is a common core of salient facts coupled with disparate legal

10  remedies within the class." *Id.*

11          The liability questions at issue are common ones, since they turn on whether

12  Nordstrom's pay practices are legal under California state law or whether

13  Nordstrom breached its contract with putative Nationwide Class Members.

14  Furthermore, commonality is readily satisfied where a "lawsuit challenges a system

15  wide practice or policy that affects all of the putative class members." *Armstrong v.*

16  *Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  In the context of Plaintiffs' California

17  Class, it is undisputed that draw commission employees solely earn commissions

18  for work performed during the Pre-Opening and Post-Closing Times.[35]

19          As to Plaintiffs' California Sub-Class, Nordstrom's policy provides that 30

20  minutes of stock assignments (inclusive of department maintenance where the

21  employee is unable to service the customer) and cold-calling and/or writing thank

22  you notes are compensated solely by commission.[36]  In addition, Nordstrom fails to

23  follow its policy requiring meetings to be paid on an hourly basis.[37]  The

24  Nationwide Class likewise rests on same policies and practices, which Nordstrom

---

[34] Sham. Decl. Ex. 3 Blum. Depo 2.28 at 50:21-51:5; 53:1-2; 54:1-8; 56:3-6.
Nordstrom maintains records of the position title of terminated employees for seven
years. *Id.* at Ex. 3 Blum. Depo 9.28 at 51:17-52:4.
[35] Sham. Decl. Ex. 1 Blum. Decl. ¶¶ 2,8; *Id.* at Exs. 4-6.
[36] Sham. Decl. Ex. 1 Blum. Decl. ¶ 18; *Id*. at Exs. 7-16.
[37] Sham. Decl. Exs. 9-17.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

applies on a nationwide basis as a binding contract between it and draw

commission employees.[38] *See In re Chase Bank USA, N.A. "Check Loan" Contract*

*Litigation*, 274 F.R.D. 286, 291-92 (N.D. Cal. 2011) (where terms of agreements

were "materially similar," even though there was variation in the specific text, and

"the amount of damages incurred by any particular class member may differ," the

differences do not defeat certification under the commonality prong, "even where

individualized evidence may be necessary for purposes of a damages calculation").

The common questions of fact and law include:

(1) Does Nordstrom have a uniform written commission plan applicable to all draw commission employees in California and nationwide?

(2) Does Nordstrom directly compensate California Class and Sub-Class Members for each hour worked?

(3) Does Nordstrom's commission plan violate California minimum wage law by failing to directly compensate California Class and Sub-Class Members for their time spent working during either: (a) the 40 minutes before and after the posted store operating hours, (b) the 30 minutes of stock assignments, (c) meetings, or (d) cold-calling and writing thank you notes?

(4) Does Nordstrom's failure to directly compensate commission employees for all hours worked violate California public policy?

(5) Does Nordstrom's failure to directly compensate commission employees for all hours worked constitute an unfair business practice under California Business and Professions Code section 17200?

(6) Did Nordstrom breach its agreement with draw commission employees nationwide by failing to pay an hourly rate for stock assignments in excess of 30 minutes and by failing to pay for time spent in meetings?

Indeed, this Court has already made a determination of some of the key

common issues of law and fact in this litigation.  For instance, this Court held that

"Nordstrom's averaging method for commissioned employees is prohibited" (Order

at 8:13-14) and "Nordstrom's employees are not being compensated directly for

stocking, pre-opening, or post-closing time." Order at 9:16-18.

---

[38] Sham. Decl. Ex. 3 Blum. Depo 9.28 at 107:11-24;136:4-16; 137:5-20; 139: 5-6.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Accordingly, based on Nordstrom's uniform compensation plan and the common questions of law and fact at issue, the commonality requirement of Rule 23(a)(2) is easily met.

### iii. The Proposed Class Representatives' Claims Are Typical of Those of the Proposed Classes They Seek To Represent

Similar to the commonality prong of Rule 23(a)(2), "[t]he Ninth Circuit construes the typicality requirement permissively." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 396 (C.D. Cal. 2008) (citing *Hanlon*, 150 F.3d at 1020). "Representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, Plaintiffs' claims are co-extensive of absent putative class members in the California and Nationwide Classes and Sub-Class as they are subject to the same policies and contractual terms uniformly applied by Nordstrom against all draw commission employees nationwide and have been injured by the same. *See Hanon*, 976 F.2d at 508. Since 2004, plaintiff Gina Balasanyan has worked as a draw commission salesperson in Nordstrom's St. John departments in Santa Anita and Glendale California.[39] From 2004, plaintiff Nune Nalbandian has worked as a draw commission salesperson in Nordstrom's men's wear department in Glendale, California.[40] Nordstrom paid Plaintiffs for all time it categorized as "selling time" solely with commissions.[41] Nordstrom also paid Plaintiffs their respective hourly rates for all time it designated as "non-sell time."[42]

Just like the named Plaintiffs, Nordstrom compensates its draw commission salespersons pursuant to a plan that pays them only commissions for all designated

---

[39] Bal. Decl. at ¶ 3.
[40] Nal. Decl. at ¶ 3.
[41] Sham. Decl. Ex. 1 Blum. Decl. ¶¶2, 7, 10.
[42] Sham. Decl. Ex. 1 Blum. Decl. ¶¶2, 7.

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

"selling time," and pays them an hourly rate for all designated "non-sell time."[43]

Nordstrom's compensation plan applies to all draw commission employees in

California and nationwide, including Plaintiffs.[44]  Thus, the claims and damages

Plaintiffs allege on behalf of themselves and the Classes and Sub-Classes all result

from Nordstrom's policy and agreement with all draw commission employees

nationwide, and therefore are typical.  *See Kamar*, 254 F.R.D. at 396 ("Given the

common policy, the fact that there have been variations in meetings attended,

scheduled shifts, and actual hours of work does not defeat typicality").

For instance, identical to Plaintiffs, all the California Class Members are paid

with commission earnings for the Pre-Opening and Post-Closing Time.[45]

Nordstrom's timekeeping system *automatically* categorizes "non-sell time" as any

time before the Pre-Opening Time and any time after the Post-Closing Time.[46]  This

method of compensation has been, and continues to be, applied by Nordstrom to all

California Class Members, including Plaintiffs.[47]

Plaintiffs and the California Sub-Class Members are likewise paid

commission for at least 30 minutes of stock assignments per shift, cold-calling and

writing thank you notes.[48]  As for the Nationwide Class, Plaintiffs and Nationwide

Class Members are subject to the same binding agreement found in Nordstrom's

Commission Calculation Agreement, employee handbook and new hire materials,

which provide that commission salespersons will be paid on an hourly basis for all

time spent in excess of 30 minutes per shift on stock assignments and at meetings.[49]

Plaintiffs are employed by Nordstrom as draw commission employees, and

---

[43] Sham. Decl. Ex. 1 Blum. Decl. ¶¶2, 7, 8, 10.

[44] Sham. Decl. Ex. 1 Blum. Decl. ¶¶2, 7, 8, 10; *Id*. at Ex. 3 Blum. Depo 2.28 at 136:4-136:16.

[45] Sham. Decl. Ex. 1 Blum. Decl ¶¶2, 7, 8, 10, 13, 19, 30; *Id*. at Ex. 2 Blum. Depo. 2.27 at 30:3-31:4, 33:3-11; *Id*. at Ex. 3 Blum. Depo. 2.28 at 93:12-19.

[46] Sham. Decl. Ex. 1 Blum. Decl ¶43; *Id*. Ex. 2  Blum. Depo. 2.27 at 33:3-15.

[47] Sham. Decl. Ex. 1 Blum. Decl., ¶¶4, 8, 43; Bal. Decl. ¶ 8; Nal. Decl. ¶¶ 7, 9.

[48] Bal. Decl. ¶ 14; Nal. Decl. ¶ 10.

[49] Sham. Decl. Ex. 3 Blum. Depo 9.28 at 107:11-24, 129:23-131-9, 136:4-16, 137:5-20, 139: 5-6; *Id*. at Exs. 7-17.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1  are suffered to work under the same commission compensation structure and

2  employment agreement as the California and Nationwide Classes and Sub-Class

3  Members.  Plaintiffs and members of the Classes and Sub-Class have been injured

4  by Nordstrom's failure to pay an hourly rate as required under California law and

5  Nordstrom's contract nationwide. Thus, Plaintiffs are proper representatives

6  because their claims are typical of the claims of all other potential class members.

7  *iv.*   **The Class Representatives and Class Counsel Are Adequate**

8  Rule 23(a)(4) requires that "the representative parties will fairly and

9  adequately protect the interests of the class." "To satisfy this requirement, Plaintiffs

10  must establish that: (1) the class representatives do not have a conflict of interest;

11  and (2) class counsel will adequately represent the interests of the class." *Wren v.*

12  *RGIS Inventory Specialists,* 256 F.R.D. 180, 210 (N.D. Cal. 2010).  Class

13  representatives are considered to be inadequate only where differences between

14  named plaintiffs and other potential class members create conflicts of interest

15  between the named plaintiffs' interests and the class members' interests. *See*

16  *Richmond,* 29 Cal. 3d at 470.

17  Both elements are satisfied in the instant action. Plaintiffs are willing and

18  able to serve as class representatives and have no conflicts with the putative

19  California and Nationwide Classes and Sub-Class Members concerning any issues

20  which are subject of this litigation.[50]  Plaintiffs have retained capable counsel that

21  has, and will continue, to represent the interest of the California and Nationwide

22  Classes and Sub-Class Members fairly and adequately.[51]  Plaintiffs' Counsel has

23  extensive litigation experience, and is committed to vigorously prosecute this action

24  on behalf of Class.[52] In addition, for the California Class and Sub-Class, Plaintiffs'

25  Counsel will be associating with counsel in the consolidated action, Deason &

26  Archbold and Barnhill & Vaynerov LLP, both of which are highly experience and

27  ───────────────
[50] Bal. Decl. ¶ 4; Nal. Decl. ¶ 19.

28  [51] Declaration of Kathryn Lee Boyd ("Boyd Decl.") ¶ 2.
[52] Boyd Decl. ¶¶ 2, 3.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

- 15 -
Plaintiffs' Notice of Motion and Motion for Class Certification   Master Case No. 10-cv-2671 JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

1    competent law firms, as co-class counsel.[53]

2    ## C. THE PROPOSED CALIFORNIA AND NATIONWIDE CLASSES
3    MEET THE REQUIREMENTS OF RULE 23(b)

4    In addition to meeting the requirements set forth in Fed. R. Civ. Proc. 23(a),

5    *supra*, Plaintiffs seek to certify this matter pursuant to Rule 23(b)(3).  Under Rule

6    23(b)(3) a class is certifiable where "questions of law or fact common to members

7    of the class predominate and a class action is superior to other available methods

8    for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).

9    ### i.    *Common Questions of Law and Fact Predominate*

10   The predominance inquiry tests whether proposed classes are "sufficiently

11   cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022.

12   Rule 23(b)(3) focuses the relationship between the common and the individual

13   issues, with the goal of achieving judicial economy. *See Valentino v. Carter-*

14   *Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).   If the individual issues do not

15   overwhelm the common questions so as to render the class action valueless, then

16   the predominance test is met. *See Thomas & Thomas Rodmakers, Inc. v. Newport*

17   *Adhesives and Composites, Inc.*, 2002 U.S. Dist. LEXIS 10546 *25 (C.D. Cal.

18   2002); *Hanlon*, 150 F.3d at 1022 ("When common questions present a significant

19   aspect of the case and they can be resolved for all members of the class in a single

20   adjudication, there is clear justification for handling the dispute on a representative

21   rather than on an individual basis.").

22   "When the claim is that an employer's policy and practices violated labor

23   law, the key question for class certification is whether there is a consistent

24   employer practice that *could* be a basis for consistent liability."  *Kamar*, 254 F.R.D.

25   at 399. "Thus, where the employer has a uniform policy that is uniformly applied,

26   the appropriateness of class certification is 'easily established.'" *Wren,* 256 F.R.D.

27   at 204. Moreover, even if individualized liability issues did exist, the "mere

28   ---
[53] Boyd Decl. ¶ 4.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

- 16 -
Plaintiffs' Notice of Motion and Motion for Class Certification    Master Case No. 10-cv-2671 JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

existence of individualized liability issues is not sufficient to warrant denial of class certification." *Id.,* at 204.

## 1. **Predominance is Satisfied for the California Class**

A common nucleus of facts and legal remedies overwhelmingly dominate Plaintiffs' California Class. The claims of Plaintiffs and the California Class Members will succeed or fail together because they are all predicated on the legality of Nordstrom's compensation scheme. Indeed, this Court held that Nordstrom has engaged in illegal averaging for all commission salespersons. Order 8:13-14.

It is undisputed that Nordstrom's uniform policy provides that all draw Commission Salespeople are compensated for time worked during the Pre-Opening and Post-Closing Time solely by commission.[54] Draw commission employees all clock into and out of Nordstrom's time keeping system at the beginning and end of their respective shifts.[55] Nordstrom maintains time records that identify the date, month, year and exact time each commission employee, including Plaintiffs, clocked into and out of Nordstrom's time keeping system.[56] These records establish when Nordstrom's time keeping system automatically switched a draw commission salesperson's earnings from commission to hourly – for instance if the Draw commission salesperson arrived at work before the Pre-Opening Time – and were Draw commission salesperson earned an hourly rate because they were instructed to enter in non-sell code.[57] Thus, no individualized liability issues exist where Nordstrom compensates all putative California Class Members with commission for the Pre-Opening and Post-Closing Time and maintains records of when they worked Pre-Opening and Post-Closing Times. In addition, Nordstrom's time records will unequivocally determine the amount of damages for each individual Class Member and the California Class as a whole. *See Blackie v.*

---

[54] Sham. Decl. Ex. 1 Blum. Decl. ¶¶2, 7, 8, 10, 13, 19, 30; *Id*. at Ex. 2 Blum. Depo. 2.27 at 30:3-31:4, 33:3-11; *Id*. at Ex. 3 Blum. Depo. 2.28 at 93:12-19.
[55] Sham. Decl. Ex. 2 Blum. Depo 2.27 at 114:13-25.
[56] Sham. Decl. Ex. 23; *Id*. at Ex. 3 Blum. Depo 2.28 at 155:19-156:20.
[57] Sham. Decl. Ex. 23; *Id*. at Ex. 3 Blum. Depo 2.28 at 155:19-157-7.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

*Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment").

Since individualized determination of damages does not defeat class certification, *see id*, and the only other typical argument raised by employers in opposition to commonality and predominance – individualized liability issues – is also not a viable argument against the California Class, the predominance element is met.

### 2. **Predominance is Satisfied for the California Sub-Class**

Similarly in the California Sub-Class, the predominant legal and factual question will center on the legality of Nordstrom's compensation scheme. It is undisputed that Nordstrom's compensation structure applies uniformly to all draw commission salespersons, and Nordstrom fails to pay an hourly wage for at least 30 minutes of stock assignments per shift and cold-calling and writing thank you notes.[58]  In addition, in contravention of its own policy and contract, for certain required meetings, including yearly performance reviews, Nordstrom fails to compensate Sub-Class Members at an hourly rate.  The Court has already made a determination that "Nordstrom's employees are not being compensated directly for stocking, pre-opening, or post-closing time." Order at 9:16-18. The predominant legal question – which this Court has answered – will determine if all Sub-Class Members are directly being paid minimum wage for activities performed during operating hours.  Thus, there are no individualized liability issues.

In addition, there are no individual factual issues given Nordstrom's own express policy – despite alleged different practices of managers and employees. *See Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224, *28-29 (N.D. Cal. Aug. 29, 2007) (compiling cases certifying classes despite individual issues of liability where company-wide policies give rise to liability).  In *Kurihara*, plaintiff's proposed class consisted of employees who were subject to employee inspections.

[58] Sham. Decl. Ex. 1 Blum. Decl. ¶ 18*; Id.* at Exs. 7-16.

SCHWARCZ, RIMBERG, BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

Plaintiffs' Notice of Motion and Motion for Class Certification   Master Case No. 10-cv-2671 JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

*Id*. at *2. The defendant asserted that the implementation of its inspection policy varied substantially among stores and employees. *Id*. at *10.  In particular, the defendant asserted that the predominance element was not met because "it is impossible to determine whether, how frequently, and for what length of time any employee is subject to inspection without examining the employee's individual circumstances and considering a host of factors unique to each employee." *Id*. at *9.  The court held that predominance was met where plaintiff submitted evidence of a company-wide policy, even where the plaintiff "submitted little or no evidence as to the implementation of that policy." *Id*. at *29.[59]

Similarly here, Nordstrom's uniform policy provides that draw commission employees are expected to engage in stock assignments (including tasks during store hours in which the salesperson is unavailable to service customers), meetings and cold-calling customers, and based on this written policy, Sub-Class Members are not compensated for time spent on these specific activities.  *See Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009) (granting class certification and holding "[i]n evaluating predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members.").

### 3. <u>Predominance is Satisfied for the Nationwide Class</u>

It is undisputed that Nordstrom's compensation plan is an employment contract that applies to all Nationwide Class Members. *See In re Med. Capital Secs. Litig.*, 2011 U.S. Dist. LEXIS 126659 at 17 ("Courts routinely certify class actions involving breaches of form contracts").[60] Nordstrom's terms and conditions of

---

[59] *See also Wren,* 256 F.R.D. at 205-207 (certifying class despite variations in the practices of managers and employees based on defendant's policy); *Frank v. Gold'n Plump Poultry, Inc.*, 2007 U.S. Dist. LEXIS 71179 * 8 (D. Minn. September 24, 2007) ("The varying practices of the supervisors may mean that some employees have less damages than others -- or conceivably that some employees have no damages at all. But it does not detract from the point that [defendant] has not adopted a corporate policy requiring that employees be paid for [activities].").
[60] Sham. Decl. Ex. 3 Blum. Depo 2.28 at 107:11-24, 135:25-136:16, 137:5-20.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

employment uniformly provide that meetings and stock assignments in excess of 30 minutes must be compensated on an hourly basis.[61]  In denying Nordstrom's MSJ on the breach of contract claim, this Court held that if Nordstrom required employees to obtain manager permission to clock in under an hourly rate, "then it is possible that Nordstrom failed to honor the contract terms." Order at 14:19-22. Thus, according to this Court's ruling, the question of breach turns on whether Nordstrom's policy or practice requires draw commission employees to obtain manager permission in order to submit claims for non-sell time.  Plaintiffs submit that this is a company-wide practice or policy[62] while Nordstrom apparently denies it has such a policy. Thus, it is clear that this common question of fact predominates, and is thus amenable to class wide treatment.

Plaintiffs have submitted as a survey comparing the elements of breach of contract for all thirty (30) states where Nordstrom operates a department store.[63] The survey confirms that the fundamental elements of a breach of contract claim do not vary materially among the states.  *See Cf. In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 291-294 (S.D. Ohio 1997) ("minute and insignificant" variations in state law did not preclude class certification even in nationwide pharmaceutical negligence action). Indeed, since the relevant law differs little from state to state, nationwide breach of contract class actions are routinely certified based on a finding that state contract law is not so varied as to defeat Rule 23(b)(3)'s predominance requirement.[64]  As a result, there is no bar to the application of California law to the Nationwide Class.[65]

---

[61] Sham. Decl. Exs. 7-16.
[62] Bal Decl. ¶ 7; Beonzi Decl. ¶ 9; Mahdi Decl. ¶ 7; Rago Decl. ¶ 6; Hertel Decl. ¶9.
[63] Sham. Decl. Ex. 21.
[64] *See e.g., In re Conseco Life Ins. Co. Life Trend Ins. Marketing and Sales Practice Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (certifying nationwide breach of contract class and holding "the law relating to the element of breach does not vary greatly from state to state" and any difference were "[a]t best . . . isolated and relatively minor") (citations omitted); *Vedachalam v. Tata Consultancy Svcs., Ltd.*, 2012 U.S. Dist. LEXIS 46429 at *28, 34, 39 (N.D. Cal. April 2, 2012) (certifying a national breach of employment contract class).
[65] *See Washington Mutual Bank, FA v. Superior Court of Orange County*, 24

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1    Moreover, the application of California law to the contract claims of out-of-

2    state residents presents no constitutional problems of arbitrariness or unfairness

3    where, as here, California has a "significant contact or significant aggregation of

4    contacts" to each class member's claims that create state interests. *See Phillips*

5    *Petroleum Co. v. Shutts*, 472 U.S. 797, 821-822 (1985). Nordstrom operates thirty-

6    two (32) department stores in California – by far the largest number of stores of any

7    other state and a full 27% of all its stores nationwide.[66] The next highest number of

8    stores in a state is only nine (9), or 7% of the total number of stores. This means

9    that the single largest group of plaintiff class members will be residents of

10   California. These significant contacts demonstrate California's "strong interest in

11   policing wrongful conduct allegedly occurring within its borders."[67]

12   Furthermore, variations in state statutes of limitation do not preclude class

13   certification as long as commonality and predominance are satisfied.[68] To the extent

14   that this Court deems sub-classes are appropriate for the Nationwide Class, such

15   sub-classes would differentiate solely by the statutes of limitations. Out of the

16   thirty states that make up the Nationwide Class, only seven subclasses would be

17   necessary. Such a limited number of subclasses are proper for class certification.[69]

18   Cal.4th 906, 920 (Cal. 2001) ("if the relevant laws of each state are identical . . . the
     trial court may find California law applicable to class claims" without conducting
19   further choice of law analysis).
     [66] Sham. Decl. Ex. 20.
20   [67] *See Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 589 (C.D. Cal. 2008)
     (nationwide class was appropriate when defendant had a "substantial presence" in
21   California and a "significant number of class members" were California residents);
     *Roberts v Heim*, 670 F. Supp. 1466, 1494-95 (N.D. Cal. 1987) ("a plurality of class
22   members, some 25% of 2900 investors," had significant contacts with California).
     [68] *See Schramm v. JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 122440
23   (C.D. Cal. Oct. 19, 2011) ("[c]ourts have been nearly unanimous . . . in holding that
     possible differences in the application of a statute of limitations to individual class
24   members, including the named plaintiffs, does not preclude certification of a class
     action so long as the necessary commonality and, in a 23(b)(3) class action,
25   predominance, are otherwise present" ); *Williams v. Sinclair*, 529 F.2d 1383, 1388
     (9th Cir. 1975) ("The existence of a statute of limitations issue does not compel a
26   finding that individual issues predominate over common ones.").
     [69] *See Fournigault*, 234 F.R.D. at 645 (certifying seven subclasses based in part on
27   differences in state statutes of limitation in nationwide written breach of contract
     case); *In re Plastics Additives Antitrust Litig.*, 2006 U.S. Dist. LEXIS 98277 (E.D.
28   Pa. Dec. 20, 2006) (denying motion for reconsideration of order certifying six

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

### 4. <u>Damages Are Assessable Using Class-Wide Proof</u>

Individual variations in damages can be determined through well-established, efficient and readily managed procedures including surveys, statistical sampling, the use of Nordstrom's records, and testimony. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 638 (S.D. Cal. 2010) (California and federal courts use statistical sampling in determining class damages and liability); *Li v. A Perfect Day Franchise, Inc*., 2012 U.S. Dist. LEXIS 83677 (N.D. Cal. June 14, 2012) (using survey results to determine class action wage and hour damages).  Any differences between individual putative class members — such as the total amount of uncompensated time worked — affect only damages, which do not create predominating individual inquiries. *See Blackie,* 524 F.2d at 905.

If the predominant liability questions – (1) whether Nordstrom's pay scheme violates California law, and (2) whether Nordstrom breached its employment contract – are answered in the affirmative, then the subsequent calculation of the compensation owed for unpaid time will be a largely mechanical task.  Plaintiffs have retained the services of Dr. Jon Krosnick, a tenured Stanford professor and a leading expert in survey methodology. Dr. Krosnick's declaration, submitted herewith, explains the methodology he would employ to design and implement a survey conforming to the "best practices" in the survey field which would provide reasonable estimates of the time spent by California Sub-Class and Nationwide Class Members (1) performing stock assignments, (2) cold-calling/writing thank you notes, and (3) attending meetings.[70]  The methodology which could be employed range from performing an anonymous survey administered through the telephone by a professional survey firm, to deposition sampling by the parties, as well as other possibilities.[71]  As indicated by Dr. Krosnick, the survey results can

---

subclasses); *Saltzman v. Pella Corp*., 257 F.R.D. 471, 485 n.12 (N.D. Ill. 2009) (certifying six subclasses based on variations in state law in multi-state consumer fraud class action).
[70] Declaration of Dr. Jon Krosnick ("Krosnick Decl.") ¶ 12.
[71] Krosnick Decl. ¶ 55-62.

then be used to compute the ultimate damage calculations for the tasks surveyed.[72]
*See Alcantar v. Hobart Serv.*, 2013 U.S. Dist. LEXIS 6752 (C.D. Cal. Jan. 15,
2013) (upholding Dr. Krosnick's survey and survey methodology, and holding that
Dr. Krosnick's "survey evidence is relevant to give an approximation of damages").

## IV.   <u>CLASS ACTION IS A SUPERIOR METHOD OF ADJUDICATION</u>

In determining superiority, courts consider the four factors of Rule 23(b)(3).
"A consideration of these factors requires the court to focus on the efficiency and
economy elements of the class action so that cases allowed under subdivision (b)(3)
are those that can be adjudicated most profitably on a representative basis." *Zinser
v. Accufix Research Institute,* 253 F.3d 1180, 1190 (9th Cir. 2000).

The first factor is the interest of each member in "individually controlling the
prosecution or defense of separate actions." Fed .R. Civ. P. 23(b)(3)(A). "Where
damages suffered by each putative class member are not large, this factor weighs in
favor of certifying a class action." *Zinser,* 253 F.3d at 1190.  Accepting the
allegations in the SAC as true, each class member is entitled to compensation for
portions of days or hours for which no pay was separately allocated under
Nordstrom's compensation scheme. SAC at ¶¶ 12-18.  Thus, putative class
members will likely have relatively small recoveries, and as a practical reality, that
pay would likely never be recovered but for class treatment.

Next, the court considers the extent and nature of any pending litigation
commenced by or against the class involving the same issues.   Fed. R. Civ. P.
23(b)(3)(B).  Plaintiffs know of no other pending matter filed on behalf of any
former or current California or Nationwide Classes and Sub-Class Member
involving the same claims, apart from the *Maraventano* action. Boyd Decl. ¶ 6.

The third factor is "the desirability or undesirability of concentrating the
litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C).  In this
case, the California Class and Sub-Class Members were or are employed in

---

[72] Krosnick Decl. ¶ 70

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1   California.  California is a desirable forum for the Nationwide Class as the majority

2   of Nationwide Class Members were/are employed in California. [73]

3         Finally, management of a class action would not be so problematic as to

4   preclude class treatment.  First, Plaintiffs' claims center on Nordstrom's policies

5   and contract which are applicable to all putative California and Nationwide Class

6   and Sub-Class Members.[74]  Second, this Court has already determined that

7   Nordstrom has engaged in unlawful wage averaging, and that "Nordstrom's

8   employees are not being compensated directly for stocking, pre-opening, or post-

9   closing time." Order at 8:13-15; 9:16-18.  Finally, the membership of the Classes

10  and Sub-Class are sufficiently well-defined to permit meaningful notice to be given,

11  as Nordstrom maintains records and contact information for each California and

12  Nationwide Class and Sub-Class Member.[75]

13  ## V.    PLAINTIFFS' PROPOSED NOTICE SHOULD BE APPROVED

14        Attached as Exhibits A-D is Plaintiff's proposed Notice of Class

15  Certification.  The Notice is carefully drafted to mirror notice forms that other

16  federal districts courts have approved, and alternative Notices are provided based

17  on Plaintiffs' proposed California and Nationwide Classes and Sub-Class. The

18  proposed notice achieves the ultimate goal of providing employees accurate and

19  timely notice concerning, among other items, the nature of the claims, certification

20  of the Classes and Sub-Class, and their status as class members. Plaintiff requests

21  that the Court Order a sixty-day (60) notice period for putative California and

22  Nationwide Classes and Sub-Class Members to opt-out of the case. *See Carter v.*

23  [73] Sham. Dec. Ex. 20; *see also* Section c(3)(i), *supra*.

24  [74] Since contract law is essentially the same in all thirty (30) states on the issues that
are relevant here, the judicial efficiency achieved by the adjudication of common
issues is in no way hindered by the Nationwide Class. *See American Airlines, Inc.*

25  *v. Wolens*, 513 U.S. 219, 233 n.8 (1995) ("contract law is not at its core diverse,
nonuniform and confusing"). A national class therefore would be quite manageable.

26  Finally, if the Court determines that subclasses are appropriate for the Nationwide
Class, the proposed seven subclasses are readily manageable.

27  [75] Sham. Decl. Ex. 3 Blum. Depo 2.28 at 50:21-51:5; 53:1-2; 54:1-8; 56:3-6.
Nordstrom maintains records of the position title of terminated employees for seven

28  years. *Id*. at Ex. 3 Blum. Depo 9.28 at 51:17-52:4.

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

1   *Anderson Merchandisers, LP*, 2008 U.S. Dist. LEXIS 53852 (C.D. Cal. July 10,

2   2008) (granting ninety-day notice period).

3         In the instant case, notice by first class mail for former employees and as an

4   insert along with the paycheck and/or internal company-wide delivery for current

5   employees is appropriate.  Accordingly, Plaintiffs respectfully request the Court to

6   issue an Order that:  (1) within 15 days after the Court's Order on this Motion,

7   Nordstrom produce to Class Counsel an electronic list of all California and

8   Nationwide Classes and Sub-Class Members, including their name, address,

9   telephone number, dates of employment as draw commission salespersons, location

10  of employment, date of birth, and their Social Security number; (2) within 15 days

11  after the class member list is produced, Nordstrom deliver to all current employees,

12  with their paycheck and/or via internal delivery, the Notice in the form concurrently

13  filed herewith; (3) within 15 days after the class member list is produced,

14  Nordstrom send to all former employees, *via* first class mail, the Notice in the form

15  concurrently filed herewith; and (4) Nordstrom bear the cost of said Notice.  *See*

16  *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009)

17  ("District courts may order a class action defendant to pay the cost of class

18  notification after they determine that the defendant is liable on the merits.").

19  **V.    CONCLUSION**

20        For the foregoing reasons, this Court should grant Plaintiffs' Motion For

21  Class Certification.  The Court should further approve the delivery of the attached

22  Notice.  Finally, the Court should Order that a list identifying the Class Members be

23  provided to the claims administrator within fifteen (15) days of the Order.

24  ///

25  ///

26  ///

27  ///

28  ///

SCHWARCZ, RIMBERG,
BOYD & RADER LLP
6310 San Vicente Blvd
Los Angeles, CA 90048

- 25 -
Plaintiffs' Notice of Motion and Motion for Class Certification     Master Case No. 10-cv-2671 JM (WMc)
Balasanyan et al. v. Nordstrom, Inc

1    Dated:  March 6, 2013                    Respectfully Submitted,

2                                            **SCHWARCZ, RIMBERG, BOYD &**
                                             **RADER, LLP**
3

4                                            By:    /s/ Kathryn Lee Boyd____

5                                                     Kathryn Lee Boyd, Esq.
                                                     *Attorney for individual and*
6                                                    *representative Plaintiffs Gina*
                                                     *Balasanyan and Nune Nalbandian*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHWARCZ, RIMBERG,**
**BOYD & RADER LLP**
6310 San Vicente Blvd
Los Angeles, CA 90048

- 26 -
Plaintiffs' Notice of Motion and Motion for Class Certification    Master Case No. 10-cv-2671 JM (WMc)
Balasanyan et al. v. Nordstrom, Inc